EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Estado Libre Asociado de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Casta Developers, S.E. y otros<br><br>Recurridos | Certiorari<br><br>2004 TSPR 81<br><br>161 DPR \_\_\_\_ |

Número del Caso: CC-2003-149

Fecha: 25 de mayo de 2004

Tribunal de Circuito de Apelaciones:

Circuito Regional I

Juez Ponente:

Hon. Rafael Ortiz Carrión

Oficina del Procurador General:

Lcdo. Héctor Clemente Delgado
Procurador General Auxiliar

Abogada de la Parte Recurrida:

Lcda. Lydia M. Ramos Cruz

Materia: Sentencia Declaratoria, Nulidad de Contrato, Pago Ilegal de Fondos Públicos y Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EL TRIBUNAL SUPREMO DE PUERTO RICO

Estado Libre Asociado de
Puerto Rico

     Peticionario

          vs.

Casta Developers, S.E. y otros

     Recurridos

CC-2003-149     CERTIORARI

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 25 de mayo de 2004

El 14 de junio de 2001, el Estado Libre Asociado de Puerto Rico presentó, ante la Sala Superior de San Juan del Tribunal de Primera Instancia, una demanda de sentencia declaratoria, nulidad de contrato, pago ilegal de fondos públicos y cobro de dinero contra Casta Developers, S.E., Miguel Ángel Cabral Veras, Jeannette Stampar Handeberge y Rolando Cabral Vieras, su esposa y la sociedad legal de gananciales compuesta por ambos. En la referida demanda el E.L.A. impugnó la validez legal de unos acuerdos que dieron base a unas transacciones inmobiliarias realizadas por los demandados con el propio Estado, reclamando la

devolución de las cantidades de dinero que había pagado, las cuales, según se alegó, eran excesivas y onerosas para el interés público.

Los demandados, previo a contestar la demanda, le cursaron al E.L.A. un pliego de interrogatorio; acompañaron al mismo una moción solicitando del tribunal que le ordenara a los demandantes contestar dicho interrogatorio en un plazo de cinco días. En el interrogatorio se incluyeron, en lo aquí pertinente, las siguientes preguntas:

2. Indique si al presente el Departamento de Justicia de Puerto Rico o alguna otra agencia o departamento del Estado Libre Asociado de Puerto Rico mantiene(n) activa investigación criminal alguna relacionada con los hechos que dan lugar a la acción civil radicada en este caso.

3. De la anterior pregunta ser contestada en la afirmativa, indique si Casta Developers, S.E., Miguel Ángel Cabral Veras, Jeannette Stampar Handerberge, Rolando Cabral Veras y/o su esposa Fulana De Tal, son objeto de dicha investigación criminal. De ser contestada en la afirmativa, indique cuál(es) de los demandados es objeto de dicha investigación.

4. Indique si para la radicación de la presente acción civil se compartió información entre

los abogados a cargo de la investigación civil y los abogados a cargo de la investigación criminal.

5. Indique si se han realizado reuniones entre los abogados a cargo del caso civil y los encargados del caso criminal para discutir los hechos de este caso y la estrategia a seguir en la tramitación judicial del mismo.

El 25 de junio de 2001, el E.L.A. solicitó que se expidiera una orden protectora a su favor, a los fines de que se le releva de divulgar la información solicitada en el aludido pliego de interrogatorios. A esos efectos, alegó que la información relativa a la existencia o no de investigaciones criminales relacionadas con los hechos que dieron lugar a la radicación de la acción civil en el presente caso constituye materia privilegiada y protegida por la Regla 31 de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 31, pues, según adujo, con ello se pone innecesariamente en riesgo, entre otras cosas, los resultados de una posible investigación en curso. Por otro lado, y en lo que respecta al asunto del intercambio de información entre los abogados a cargo del caso civil y los encargados del caso criminal, el E.L.A. alegó que "[l]a revelación de dicha información se relaciona directamente con las comunicaciones habidas entre abogado y cliente (el Estado), incluyendo las gestiones realizadas

por los abogados, y que forman parte de su 'work product', las cuales están protegidas por la Regla 25 de Evidencia (32 L.P.R.A. Ap.IV, R.25)."

Los demandados, por su parte, presentaron un escrito en oposición a la orden protectora solicitada, alegando, entre otras cosas, que ninguno de los privilegios invocados por el Estado es de aplicación al caso de autos, pues, según arguyeron, en el pliego de interrogatorio cursado no se solicitó ninguna información oficial que pudiera poner en riesgo un posible caso criminal ni la vida de alguno de los informantes. Sobre este particular puntualizaron que no pretendían obtener información sobre los nombres o identidades de informantes, confidentes ni testigos del Estado o sobre los objetivos, métodos o técnicas que pudieran ser utilizadas en un posible caso criminal. Como último argumento señalaron que, aún asumiendo que las reglas invocadas fueran de aplicación al caso de autos, las mismas no gozarían de mayor jerarquía que la garantía constitucional contra la autoincriminación contenida tanto en la Constitución del Estado Libre Asociado de Puerto Rico como en la de los Estados Unidos.

Así las cosas, el 19 de septiembre de 2001 el E.L.A. le cursó a los demandados un escrito titulado "Primer Pliego de Interrogatorio y Requerimiento de Producción de Documentos". En vista de lo anterior, los demandados solicitaron del tribunal que emitiera una orden protectora que los eximiera de contestar el interrogatorio sometido

por el Estado, alegando que mientras el Estado no revelara si estaba llevando a cabo una investigación criminal sobre los demandados, éstos tenían derecho a no autoincriminarse y a objetar cualquier mecanismo de descubrimiento de prueba.

Luego de varios incidentes procesales, el 17 de mayo de 2001 el foro de instancia celebró una vista sobre las cuestiones en controversia. Tras evaluar los memorandos de derecho radicados por las partes, el 27 de junio de 2002, el foro primario emitió una resolución en la cual concluyó que a las preguntas de los demandados contenidas en el primer pliego de interrogatorio no le eran aplicables los privilegios invocados por el Estado. En consecuencia, el foro de instancia concedió al Estado un término de diez días para contestar el interrogatorio cursado por los demandados, disponiendo que era la única forma en que éstos podían estar en posición de determinar si invocan o no su derecho a no autoincriminarse.[1]

Denegada la reconsideración solicitada, el E.L.A. recurrió --mediante recurso de *certiorari*-- ante el Tribunal de Apelaciones, quien modificó, y así modificado, confirmó el dictamen recurrido. En primer lugar, el foro apelativo intermedio concluyó, al igual que lo hizo el

---

[1] A esos efectos, el foro primario explicó que: "los demandados lógicamente tienen una aprehensión real de ser acusados criminalmente en el futuro y de que la información provista por ellos en el proceso de descubrimiento de prueba en el presente caso sea utilizada posteriormente para acusarlos penalmente."

foro primario, que la información solicitada por los demandados no constituía materia privilegiada. A esos efectos, señaló que al reclamar el privilegio de información oficial el Estado se limitó a aseverar que la información solicitada era privilegiada, pero no cumplió con los estrictos criterios de la Regla 31 de las de Evidencia a los fines de colocar al tribunal en posición de valorar la procedencia de su reclamo, ni demostró que la divulgación de la información pusiera en riesgo los derechos de terceros, los intereses del Gobierno o la seguridad pública. En lo que respecta al privilegio abogado-cliente reclamado por el Estado, el referido foro coincidió con el tribunal de instancia a los efectos de que este privilegio no es de aplicación al caso de autos, pues éste sólo protege el contenido de las comunicaciones.

En segundo lugar, el foro apelativo intermedio sostuvo que "la información sobre la existencia de una investigación criminal no resulta pertinente para ejercer el derecho a no incriminarse." Como tercera conclusión el referido foro determinó, específicamente en cuanto a la codemandada Casta Developers, S.E., que, por tratarse de una entidad jurídica, ésta "est[á] obligada a responder al interrogatorio enviado por el Estado Libre Asociado o a demostrar, a satisfacción del Tribunal de Primera Instancia, que no existe una persona autorizada que pueda responder el interrogatorio sin exponerse a riesgo real de responsabilidad criminal. Ello en virtud de la norma a los

efectos de que el privilegio a no autoincriminarse aplica sólo a personas naturales y no a entidades colectivas o jurídicas como ella.

Concluyó, además, el foro apelativo que "... la información que los demandados le solicitan al Estado Libre Asociado en el Primer Interrogatorio es pertinente en este pleito, en la medida en que resulta pertinente para que los demandados ejerzan su prerrogativa de determinar la manera en que deben conducir su caso, las estrategias a seguir en el desarrollo del proceso y los potenciales remedios que podrían requerir del tribunal recurrido en el trámite del presente proceso." (énfasis suplido).

Insatisfecho con esta determinación, el E.L.A. recurrió, oportunamente, ante este Tribunal --vía *certiorari*-- imputándole al Tribunal de Apelaciones haber errado:

> ... al determinar que, con el fin de delinear su estrategia en el caso, la recurrida puede condicionar su participación en el descubrimiento de prueba hasta que el E.L.A. responda a requerimientos de ésta sobre la existencia de posibles investigaciones criminales en contra de las personas naturales que la componen, aun cuando la información solicitada no es pertinente ni a los méritos del caso ni al asunto de si dichas personas están expuestas a un riesgo real de responsabilidad criminal.

Expedimos el recurso. Contando con la comparecencia de ambas partes, y estando en condiciones de resolver, procedemos a así hacerlo.

I

Como es sabido, la tendencia moderna en el ámbito del procedimiento civil es a facilitar el descubrimiento de prueba de forma tal que se coloque al juzgador en la mejor posición posible para resolver justamente. Ward v. Tribunal Superior, 101 D.P.R. 865, 867 (1974). A esos efectos, hemos expresado que un amplio y adecuado descubrimiento de prueba antes del juicio facilita la tramitación de los pleitos y evita los inconvenientes, sorpresas e injusticias que surgen cuando las partes ignoran hasta el día de la vista las cuestiones y los hechos que en realidad son objeto del litigio. Medina Morales v. Merk, Sharp & Dhome, 135 D.P.R. 716 (1994); Sierra v. Tribunal Superior, 81 D.P.R. 554, 560 (1959).

A tono con lo anterior, hemos expresado que "un amplio y liberal descubrimiento de prueba es 'la médula del esfuerzo de destruir de una vez y para siempre la deportiva teoría de justicia' que tanto mina la fe del pueblo en el sistema judicial." General Electric v. Concessionaires, Inc., 118 D.P.R. 32, 38; Lluch v. España Service Sta., 117 D.P.R. 729, 743 (1986). Del mismo modo, hemos señalado que el descubrimiento de prueba --bien utilizado-- acelera los procedimientos, propicia las

transacciones y evita sorpresas indeseables en el juicio.[2] *Ibid.*

El amplio alcance del descubrimiento de prueba está bien establecido en la Regla 23.1(a) de las de Procedimiento Civil. 32 L.P.R.A. Ap. III, R. 23.1. La misma limita el descubrimiento sólo en dos aspectos; a saber: (i) que la información solicitada no sea materia privilegiada, y (ii) que la misma sea pertinente al asunto en controversia. Rodríguez v. Scotiabank de P.R., 113 D.P.R. 210, 212 (1982); Rivera Alejandro v. Algarín, 112 D.P.R. 830 (1982); Ades v. Zalman, 115 D.P.R. 514 (1984); Ward v. Tribunal Superior, 101 D.P.R. 865 (1974); Sierra v. Tribunal Superior, 81 D.P.R. 554 (1951).

A

En lo que respecta a la "materia privilegiada" a la que alude la referida disposición reglamentaria, hemos precisado que se trata exclusivamente de los privilegios reconocidos en las Reglas de Evidencia.[3] En lo aquí

---

[2] En ese sentido se ha entendido que "[e]l uso de las Reglas de Procedimiento Civil pretenden que el juicio sea menos un juego de la gallinita ciega y más una contienda justa en que los hechos sean descubiertos en la más amplia extensión posible", pues "[l]a justicia no es un juego, ni un deporte, sino una empresa formal a ser conducida seriamente." J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Ed. Publicaciones J.T.S., San Juan, 2000, T. II, pág. 468.

[3] Véase: Rivera Alejandro v. Algarín López, ante, a la pág. 833; Sierra v. Tribunal Superior, ante, a la pág. 572.

pertinente, la Regla 31 de este cuerpo reglamentario, 32 L.P.R.A. Ap. IV, R.31, dispone:

> a) Según usada en esta regla, "información oficial" significa información adquirida en confidencia por un funcionario o empleado público en el desempeño de su deber y que no ha sido oficialmente revelada ni está accesible al público hasta el momento en que se invoca el privilegio.
>
> b) Un testigo tiene el privilegio de no divulgar una materia por razón de que constituye información oficial, y no se admitirá evidencia sobre la misma si el tribunal concluye que la materia es información oficial y su divulgación está prohibida por ley, o que divulgar la información en la acción sería perjudicial a los intereses del gobierno del cual el testigo es funcionario o empleado.

En ocasión de interpretar el alcance de la disposición reglamentaria antes citada, en Santiago v. Bobb, 117 D.P.R. 153, 159 (1986), expresamos que los tribunales deben ser cautelosos en conceder cualquier pedido de confidencialidad del Estado, quien deberá demostrar precisa e inequívocamente, la aplicabilidad de la excepción antes enunciada. En ese sentido, fuimos enfáticos al señalar que "[h]oy día la secretividad en los asuntos públicos es excepción y no norma." Ibid.

A tono con lo anterior, hemos enumerado ciertos requisitos que deben ser observados por los tribunales al momento de evaluar mociones sobre descubrimiento de información oficial; éstos son: (i) si el peticionario ha cumplido con los requisitos estatutarios requeridos para el descubrimiento de prueba; y (ii) si la información fue

adquirida en confidencia según nuestra Regla 31(a). De ser en la afirmativa el carácter confidencial de la información, el juzgador deberá sopesar los intereses en conflicto a fin de resolver si aplica o no el privilegio.[4] Santiago v. Bobb, ante, a las págs. 161-62 (citando a Shepherd v. Superior Court of Alameda County, 17 Cal. 3d 107 (1976)).

Asimismo, al abordar el reclamo de confidencialidad del Estado, los tribunales deberán tomar en consideración lo dispuesto por este Tribunal a los efectos de que "el balance de intereses requerido por la Regla 31(b) debe realizarse de forma estricta a favor del reclamante de la solicitud y en contra del privilegio reconocido en dicha regla." Santiago v. Bobb, ante, a la pág. 162 esc. 4. Para que el Estado prevalezca, éste debe presentar prueba y demostrar la existencia de intereses apremiantes de mayor jerarquía que los valores protegidos por el derecho de libertad de información de los ciudadanos. En estos casos

---

[4] Al dictaminar si cierta información fue adquirida en confidencia, los tribunales pueden considerar el tipo de documento en cuestión, tales como memorandos internos, el testimonio de las partes, los trámites usuales de la agencia al recibir tal tipo de información e inclusive la propia naturaleza de la información. La confidencialidad de la información se determina mediante un análisis de la totalidad de las circunstancias que rodean la comunicación, así como su propia naturaleza. En esta gestión el tribunal puede hacer un examen en cámara de los documentos o información que el Estado alega son privilegiados, como condición previa al reconocimiento del privilegio. Peña Clos v. Cartagena Ortiz, 114 D.P.R. 576 (1983); Santiago v. Bobb, ante.

la función judicial radica en "resolver si determinada información está cubierta por el manto de secretividad y, de estarlo, si ello es compatible con el ejercicio de derechos constitucionales protegidos." Soto v. Srio. de Justicia, ante, a la pág. 498.

Refiriéndonos específicamente al asunto de las investigaciones criminales, en Soto v. Srio. de Justicia, ante, a la pág. 495, reconocimos el interés público en mantener confidenciales determinados documentos e informes ligados a la fase investigativa o preventiva del crimen y que por su naturaleza pongan innecesariamente en riesgo los resultados de una investigación en curso, la vida de informantes, confidentes y testigos, así como la de los propios empleados del Estado, o que de cualquier modo afecten la seguridad pública. Ello no obstante, en ese mismo caso, advertimos que toda legislación que pretenda ocultar información a un ciudadano bajo el palio de confidencialidad debe ser interpretada restrictivamente a favor del derecho del pueblo a mantenerse informado. Soto v. Srio. de Justicia, ante. Ello significa que aún en casos de expedientes investigativos, es al Gobierno a quien le corresponde establecer que es acreedor del privilegio establecido en la Regla 31, lo que implica acreditar que se trata de información oficial bajo la Regla y que el balance se inclina a su favor.

B

En lo que respecta al asunto de la "pertinencia" hemos señalado que, como regla general, se trata de un concepto que, aunque impreciso, debe ser interpretado en términos amplios. General Electric v. Concessionaires, Inc., ante, a la pág. 40. En ese sentido hemos señalado que para que una materia pueda ser objeto de descubrimiento, "basta con que exista una posibilidad razonable de relación con el asunto en controversia."[5] Asimismo, hemos resuelto que el criterio de la pertinencia incluye "todos los asuntos que puedan tener cualquier relación posible con la materia que es objeto del pleito, aunque no estén relacionados con las controversias específicas que han sido esbozadas por las alegaciones." Sierra v. Tribunal Superior, ante, a la pág. 573 (énfasis suplido). Del mismo modo, hemos señalado que "el descubrimiento de prueba permite, inclusive, la entrega de materia que sería inadmisible en el juicio, si ésta conduce a prueba admisible". Alvarado Colón v. Alemañy Planell, res. el 28 de junio de 2002, 2002 T.S.P.R. 91.

De particular relevancia al caso ante nuestra consideración, hemos reconocido que los interrogatorios se refieren a "materia pertinente" cuando solicitan información sobre alguno de los siguientes extremos: (i)

---

[5] Véase: Rodríguez v. Scotiabank de P.R., ante, págs. 212-213; Rivera Alejandro v. Algarín, ante, págs. 833-834.

prueba que sea admisible en el juicio; (ii) hechos que puedan servir para descubrir evidencia admisible; (iii) datos que puedan facilitar el desarrollo del proceso; (iv) admisiones que puedan limitar las cuestiones realmente litigiosas entre las partes; (v) datos que puedan servir para impugnar la credibilidad de los testigos; (vi) hechos que puedan usarse para contrainterrogar a los testigos de la otra parte; y (vii) nombres de los testigos que la parte interrogada espera utilizar en el juicio.[6] Como bien señaláramos en _Sierra v. Tribunal Superior,_ ante, a la pág. 573, n.10, ésta <u>no</u> es una enumeración exhaustiva de lo que constituye un "asunto pertinente", sino una simple ilustración de la amplitud del concepto. "[C]ualquier duda en cuanto a la pertinencia de la investigación debe resolverse a favor del interrogante." _Ibid_.

Ahora bien, es importante aclarar que, aunque amplio, el ámbito del descubrimiento de prueba <u>no</u> es ilimitado. En ese sentido hemos señalado que un tribunal debe rechazar por impertinente toda pregunta que <u>no tenga una posibilidad razonable de relación</u> con el asunto en controversia. <u>Rodríguez</u> v. <u>Scotiabank de P.R.,</u> ante, a la pág. 212; <u>Ortiz Rivera</u> v. <u>E.L.A.,</u> 125 D.P.R. 65, 75 (1989); véase además: J.A. Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, ante, a la pág. 481.

---

[6] <u>Sierra</u> v. <u>Tribunal Superior,</u> ante, a la pág. 573, n.10.

II

De entrada, es de rigor señalar que, coincidimos plenamente con ambos foros inferiores en cuanto a que en el presente caso el Estado falló en demostrar --de forma precisa e inequívoca-- el hecho de que la información que reclaman los demandados esté cobijada por el privilegio de "información oficial" contemplado en la Regla 31 de las de Evidencia. Ya hemos señalado que el pedido de confidencialidad por parte del Estado no puede ser concedido livianamente y que es éste quien tiene que demostrar la existencia de intereses apremiantes de mayor jerarquía que los valores protegidos por el derecho de libertad de información de los ciudadanos.

Como correctamente señaló el foro apelativo intermedio, en este caso el Estado se "limit[ó] a aseverar que la información solicitada es privilegiada, pero no cumpl[ió] con los estrictos criterios de la Regla 31 para colocar al tribunal recurrido en posición de valorar la procedencia de su reclamo, ni dem[ostró] que la divulgación de la información que se le solicita ponga en riesgo los derechos de terceros, los intereses del Gobierno o la seguridad pública . . . ." Tampoco debemos pasar por alto el hecho de que en el caso de marras no se está solicitando información obtenida en confidencia, tal y como lo exige la Regla 31 de Evidencia, ni nombres de informantes o confidentes, o documentos recopilados en el curso de una investigación criminal. Lo único que los

demandados interesan saber es si el Estado ha iniciado una investigación criminal por los mismos hechos que dieron lugar a la acción civil que se lleva a cabo en su contra.

Somos del criterio que las circunstancias del presente caso hacen indispensable que los demandados obtengan dicha información de parte del Estado. Veamos. En primer lugar, debe quedar claro que la presente controversia --si el Estado debe o no informar si ha iniciado una investigación criminal por los mismos hechos que se alegan en el caso civil-- no puede ser analizada exclusivamente desde el punto de vista de la pertinencia de la información solicitada. Si fuera así tendríamos necesariamente que coincidir con el Estado en cuanto a que la existencia o no de una investigación criminal en contra de los demandados no es pertinente para dilucidar una controversia sobre la validez de una transacción comercial que involucra el alegado manejo indebido de fondos públicos.

La presente controversia exige un análisis mucho más profundo, pues involucra aspectos procesales de mayor envergadura que superan el asunto de la pertinencia de la prueba. Después de todo, en el presente caso nadie podría sostener, responsablemente, que la información solicitada es completamente ajena al asunto que se litiga. Ello considerando que, si en efecto, existiera una investigación criminal en cuanto a alguno de los codemandados, estaríamos, entonces, ante la llamada

"litigación paralela", esto es, la litigación de casos civiles y criminales al mismo tiempo.

Como señaláramos anteriormente, al disponer del presente recurso el foro apelativo intermedio resolvió, acertadamente, que aunque la información sobre la existencia de una investigación criminal no es pertinente para ejercer el derecho a no autoincriminarse, la misma es indispensable para que los demandados puedan ejercer su derecho a determinar la manera en que conducirán su caso y elegir las estrategias que seguirán en el desarrollo del proceso. Al fundamentar dicha conclusión el referido foro se refirió a las complicaciones propias de los llamados "parallel proceedings" al señalar:

> El dilema para el acusado de elegir entre invocar el privilegio a no incriminarse en el proceso civil y arriesgarse a perder el caso; las ventajas indebidas para el Ministerio Fiscal en cuanto a la información que puede recopilar, las tentaciones de ambas partes a utilizar el proceso civil como fuente para preparar el caso criminal con el consecuente uso de los recursos judiciales de manera ineficiente y dual; comprometer en el proceso civil las bases de la defensa del caso criminal; son sólo ejemplo de los posibles conflictos que puede generar la litigación paralela [esto es, la litigación de casos civiles y criminales al mismo tiempo].

A pesar de que este tema no había sido considerado anteriormente por este Tribunal, el mismo ha sido ampliamente estudiado en la jurisdicción norteamericana, en la cual se ha discutido el asunto desde una perspectiva

<u>constitucional</u>.[7] No cabe duda que los "procesos paralelos" crean un dilema para el demandado, específicamente en aquellos casos en que se litiga primero el pleito civil. Por un lado el demandado interesa presentar ampliamente las reclamaciones y defensas que corresponden al caso civil y, por el otro, desea limitar la cantidad de información autoincriminatoria que, a través de dicho pleito, pueda obtener el Estado. *Using Equitable Powers to Coordinate Parallel Civil and Criminal Actions*, Harvard Law Review Association, 98 HARV. L. REV. 1023, 1024 (1985).

Como cuestión de hecho, en la mayoría de los casos en que un demandado decide permanecer en silencio, éste sufre inmediatamente un aumento en el riesgo de obtener una sentencia adversa. Es por ello que muchas veces los demandados, en su afán por defenderse en el caso civil, deciden "hablar" olvidando así el derecho a no autoincriminarse que, como sabemos, también les cobija en la litigación civil.

---

[7] Los "parallel proceedings" han sido definidos como "'simultaneous, adjudicative proceedings that (1) arise out of a single set of transactions, and (2) are directed against the same defendant or defendants.'" *SEC/DOJ Parallel Proceedings: Contemplating the Propriety of Recent Judicial Trends*, Mark D. Hunter, 68 MISSOURI L. REV. 149 (2003). Además, se ha señalado que estos procesos "may include investigations by any federal regulatory agency, civil injunctive or penalty actions, administrative disciplinary proceedings, cease and desist proceedings, private actions (including both class and derivative actions), proceedings by self-regulatory agencies, various state proceedings, grand jury inquiries, and/or criminal prosecutions." *Ibid*.

En otras ocasiones los demandados prefieren "sacrificar" el caso civil e invocar su derecho a no autoincriminarse, a sabiendas de que en los casos civiles los litigantes no están exentos de las inferencias adversas asociadas con este derecho.[8] <u>Baxter</u> v. <u>Palmigiano</u>, 425 U.S. 308, 318 (1976). Este dilema ha sido resumido del siguiente modo:

> The accused's testimony may be essential to a just resolution of the civil litigation. If that testimony is incriminating, however, its use in the criminal action may jeopardize the accused's criminal defense. <u>Thus, the criminal issue is whether the pressure on the accused to testify in the civil proceeding constitutes 'compulsion' under the fifth amendment</u>. *Using Equitable Powers to Coordinate Parallel Civil and Criminal Actions*, Harvard Law Review Association, ante, a la pág. 1026. (énfasis suplido).

Como vemos, <u>no se trata de que en el caso civil el acusado no pueda permanecer en silencio, haciendo uso del derecho que le reconoce la Constitución a no autoincriminarse, sino de que al enfrentarse a la disyuntiva de ganar o perder el caso civil, el demandado se ve en la obligación de defenderse, lo cual podría</u>

---

[8] Según se ha señalado: "After the criminal trial, an accused can more freely disclose information vital to his or his opponent's civil action." "The transfer of information from criminal to civil proceedings is preferable to the transfer from civil to criminal proceedings because the former preserves the criminal procedural protections for the accused while facilitating the truth-seeking goal of the civil proceedings." *Using Equitable Powers to Coordinate Parallel Civil and Criminal Actions*, Harvard Law Review Association, ante, a la pág. 1039.

considerarse como una abdicación involuntaria a su derecho constitucional. También se ha entendido que este tipo de "proceso paralelo" podría menoscabar el carácter adversativo del proceso criminal en la medida en que el Estado adquiere evidencia que fue presentada por el acusado en un caso o procedimiento de naturaleza civil.

Ahora bien, se ha resuelto que el simple hecho de que el Estado inicie estos "procesos paralelos" en contra de una misma persona no debe, por sí solo, considerarse como una actuación inherentemente inconstitucional. Véase: United States v. Kordel, 397 U.S. 1 (1970); Mainelli v. U.S., 611 F.Supp. 606 (D.R.I., 1985); SEC v. Dresser Industries, 628 F2d 1368 (D.C.Cir., 1980); Coalition of Black Leadership v. Cianci, 480 F.Supp. 1340 (D.R.I., 1979). A esos efectos, se ha reconocido que la protección del interés público puede requerir procedimientos simultáneos de parte del gobierno, sin que pueda exigírsele a éste que escoja entre un curso de acción civil o uno criminal. *Ibid*.

Estos "procesos paralelos" podrían ser considerados impropios o inconstitucionales únicamente en aquellos casos en que se demuestre la presencia de "circunstancias especiales" que sugieran la existencia de prejuicio indebido, mala fe, tácticas gubernamentales maliciosas o interferencia con derechos constitucionales. Véase United States v. Kordel, ante, a la pág. 11; SEC v. Dresser Industries, ante, a la pág. 1375.

De _particular importancia_ al caso ante nos, debemos señalar que al resolver el caso United States v. Kordel, ante, a la pág. 11, el Tribunal Supremo de los Estados Unidos consideró como una de estas "circunstancias especiales" el que se demuestre que el Estado falló en advertirle al demandado, en el caso civil, que estaba contemplando procesarlo en el campo criminal.

Con el propósito de evitar las posibles consecuencias adversas que pueden suscitarse en este tipo de litigación, los tribunales ――a solicitud de las partes―― pueden utilizar diferentes tipos de mecanismos procesales a los fines de proteger la constitucionalidad y/o integridad de estos procesos paralelos. Se ha resuelto que en estos casos los tribunales tienen amplia discreción para paralizar un caso civil,[9] posponer el descubrimiento de

---

[9] Los tribunales han desarrollado una serie de criterios que deberán ser evaluados y balanceados al momento de determinar si procede o no la paralización. Estos criterios son:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendant; (3) the convenience to the courts; (4) the interest of persons not parties to the civil litigation; (5) the public interest. Arden Way Associates v. Boesky, 660 F.Supp. 1494 (S.D.N.Y., 1987); _In Re_ Mid-Atlantic Toyota Litigation, 92 F.R.D. 358, 359 (D.Md., 1981); Golden Quality Ice Cream Co. v. Deerfield Speciality, 87 F.R.D. 53, 56 (E.D.Pa., 1980).

prueba o imponer órdenes y condiciones protectoras, siempre que el interés de la justicia así lo requiera.[10]

Estos son, _precisamente_, los mecanismos procesales a los que se refería en el presente caso el foro apelativo intermedio al señalar que si los demandados desconocían la existencia de una investigación criminal en su contra estaban impedidos de "ejercer su prerrogativa de determinar la manera en que deben conducir su caso, las estrategias a seguir en el desarrollo del proceso y los potenciales remedios que podrían requerir del tribunal recurrido en el trámite del presente proceso." Dicha información, no hay duda, resulta necesaria a los fines de determinar la procedencia de una solicitud de posposición del descubrimiento de prueba o la paralización del caso civil.[11] No debemos pasar por alto el hecho de que nos encontramos ante un asunto que puede tener implicaciones de índole constitucional.[12]

---

[10] Se ha señalado que "[w]here invocation of the Fifth Amendment imposes undue sanctions or penalties on a defendant, a court may in its discretion stay civil proceedings, postpone civil discovery, or impose protective orders and conditions in the furtherance of the interests of justice. These determinations are to be made 'in the light of the particular circumstances of the case.'" _Arden Way Associates_ v. _Boesky_, 660 F.Supp. 1494 (S.D.N.Y., 1987) (citas omitidas).

[11] Ciertamente, sería absurdo que un litigante solicite, y que un tribunal ordene, la paralización de un proceso civil hasta que culmine un proceso criminal, cuando no se tiene la certeza de que existe tal proceso criminal.

[12] No obstante lo anterior, debe quedar claro que no existe un derecho constitucional a paralizar un caso civil ante la existencia de un proceso criminal paralelo. _Arden Way_

(Continúa . . .)

En vista de que existen casos en que las circunstancias específicas de los mismos hacen meritorio que los tribunales se vean obligados a ejercer su discreción y ordenar la posposición del descubrimiento de prueba o la paralización del caso civil, con el propósito de asegurar la integridad y/o constitucionalidad del proceso, la negativa del Estado en el presente caso a informar si al momento existe una investigación criminal en contra de los demandados, resulta ser, llana y sencillamente, inaceptable. Ello considerando que con su proceder el Estado está eliminando totalmente la posibilidad de que un tribunal pueda, en su discreción y luego de analizar los hechos específicos del caso, ordenar la paralización del caso civil hasta que culmine el proceso criminal ya iniciado. De este modo, el Estado realiza una usurpación total de la función judicial, apoderándose del proceso que se ventila ante el foro judicial.

En virtud de lo antes expresado, procede confirmar el dictamen emitido por el foro apelativo intermedio, confirmatorio el mismo del emitido por el foro de instancia, a los efectos de que el Estado Libre Asociado de Puerto Rico debe informar si está llevando a cabo una

---

Associates v. Boesky, 660 F.Supp. 1494 (S.D.N.Y., 1987); Afro-Lecon, Inc. v. U.S., 820 F.2d 1198, 1202 (C.A.Fed., 1987); Securities & Exchange Comision v. Dresser Indus., 628 F.2d 1368, 1375 (C.A.D.C., 1980).

investigación criminal por los mismos hechos que dieron lugar a la acción civil que se lleva a cabo en contra de los codemandados Miguel Ángel Cabral Veras, Jeannette Stampar Handeberge y Rolando Cabral Vieras.[13] Ello no sólo le permitirá a los demandados determinar la estrategia a seguir en el caso civil, sino también a decidir sobre los remedios a solicitar del foro judicial en protección de sus derechos constitucionales, los cuales tenemos la obligación de garantizar.

### III

En mérito de lo anterior, procede confirmar la sentencia emitida por el Tribunal de Apelaciones, y devolver el caso al Tribunal de Primera Instancia, Sala Superior de San Juan, para procedimientos ulteriores consistentes con lo aquí resuelto.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[13] Del mismo modo, confirmamos lo resuelto por el foro apelativo intermedio con relación a la codemandada Casta Developers, S.E.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Estado Libre Asociado de
Puerto Rico

    Peticionario

        vs.

Casta Developers, S.E. y otros

    Recurridos

CC-2003-149     CERTIORARI

SENTENCIA

San Juan, Puerto Rico, a 25 de mayo de 2004

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Apelaciones y se devuelve el mismo al Tribunal de Primera Instancia, Sala Superior de San Juan, para procedimientos ulteriores compatibles con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Presidenta señora Naveira Merly emitió Opinión disidente a la cual se unieron los Jueces Asociados señor Fuster Berlingeri y señora Fiol Matta.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo

26

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Estado Libre Asociado de
Puerto Rico

    Peticionario

       v.                      CC-2003-149

Casta Developers, S.E. y otros

    Recurridos

Opinión Disidente emitida por la Jueza Presidenta señora NAVEIRA MERLY a la que se unen el Juez Asociado señor FUSTER BERLINGERI y la Jueza Asociada señora FIOL MATTA

San Juan, Puerto Rico a 25 de mayo de 2004

En el presente recurso nos corresponde determinar si el Estado viene obligado a revelar, como parte del descubrimiento de prueba en un pleito civil, si existe o no una investigación criminal en contra de los demandados por los mismos hechos que dieron lugar al pleito civil, para así éstos estar en posición de decidir entre contestar un interrogatorio cursado por el Estado o invocar su derecho constitucional a no incriminarse mediante su

propio testimonio.  Por entender que la opinión mayoritaria resta preeminencia y eficacia al privilegio contra la autoincriminación en nuestra jurisdicción, al acoger la doctrina federal relacionada con la litigación paralela, disentimos.

A continuación un resumen de los hechos relevantes al asunto que nos ocupa.

I

El 14 de junio de 2001, el Estado Libre Asociado (en adelante E.L.A.) presentó una demanda de sentencia declaratoria, nulidad de contrato, pago ilegal de fondos públicos y cobro de dinero ante el Tribunal de Primera Instancia, Sala Superior de San Juan, contra Casta Developers, S.E., Miguel Ángel Cabral Veras, Jeannette Stampar Handeberge, Rolando Cabral Veras, su esposa y la sociedad legal de gananciales compuesta por ambos (en adelante demandados).[14]

Antes de contestar la demanda, los demandados le cursaron un primer interrogatorio al E.L.A. en el que le solicitaron, entre otras cosas, se les indicara si se estaba llevando a cabo una investigación criminal relacionada a los hechos del caso en contra de alguno de ellos y de la anterior pregunta ser contestada en la afirmativa, se les indicara, además, cuál de los demandados era objeto de una investigación criminal.

Así las cosas, el E.L.A. presentó una moción mediante la cual objetó el interrogatorio y en la que, además, solicitó una orden protectora a tenor con la Regla 23.2 de Procedimiento Civil, 32

---

[14]   Los últimos cinco (5) fueron demandados como miembros de la mencionada sociedad especial y en su carácter personal.

L.P.R.A. Ap. III, por entender que la información solicitada constituía materia privilegiada por ser información oficial, conforme a la Regla 31 de Evidencia, 32 L.P.R.A. Ap. IV. Por su parte, los demandados se opusieron a la solicitud de orden de protección y plantearon que el privilegio de información oficial invocado por el E.L.A. no aplicaba y en el caso de que aplicara, no gozaba de mayor jerarquía que el derecho constitucional de éstos de no incriminarse mediante su propio testimonio. Con relación a esta controversia, el 10 de septiembre de 2001 el tribunal de instancia señaló una conferencia sobre el estado de los procedimientos para el 17 de mayo de 2002.

Posteriormente, el E.L.A. también le cursó a los demandados un pliego de interrogatorios y una solicitud de producción de documentos. En respuesta, los demandados solicitaron al tribunal que emitiera una orden protectora para que se les eximiera de cumplir con el requerimiento de información que se les había cursado. Plantearon que no estaban en posición de responder el interrogatorio antes mencionado puesto que aún no se había resuelto si el E.L.A. tenía que informarles si estaba realizando una investigación criminal sobre alguno de ellos, para así ellos determinar si la contestación a las preguntas del E.L.A. podía incriminarlos. El 25 de octubre de 2001 el tribunal de instancia les concedió un término de treinta (30) días a los demandados para contestar el interrogatorio. Los demandados solicitaron la reconsideración de dicha resolución, **reiterando que para estar en condiciones de ejercer su derecho constitucional a no incriminarse mediante su propio testimonio al contestar el interrogatorio, era necesario que el E.L.A. les informara si se estaba realizando**

**alguna investigación criminal en su contra**. El tribunal de instancia resolvió la solicitud de reconsideración concediendo a los demandados un término de treinta (30) días para contestar a partir de la fecha en que el E.L.A. contestara el primer interrogatorio. Así las cosas, el E.L.A. presentó una moción mediante la cual solicitó que se dejase sin efecto dicho dictamen, a lo cual se opusieron los demandados.

Posteriormente, el E.L.A. presentó un recurso de certiorari ante el antiguo Tribunal de Circuito de Apelaciones (en adelante Tribunal de Apelaciones) en el que también solicitó la revocación de tal determinación. Mientras tanto, el tribunal de instancia resolvió que en el señalamiento de 17 de mayo de 2002 se discutirían los planteamientos en cuanto al descubrimiento de prueba y al privilegio a no incriminarse, por lo que el foro apelativo intermedio desestimó el recurso por prematuro. Inconforme, el E.L.A. presentó una petición de certiorari ante este Tribunal. Mediante resolución de 31 de mayo de 2002 denegamos el recurso solicitado en esa etapa de los procedimientos.

Celebrada la vista sobre el estado de los procedimientos, el 27 de junio de 2002 el tribunal de instancia dictó una resolución mediante la cual resolvió, en lo aquí pertinente, que la información solicitada al E.L.A. en el primer interrogatorio no era privilegiada y que por lo tanto debía contestarse el interrogatorio, para que a la luz de la información suministrada, los demandados pudieran optar entre invocar su derecho a no incriminarse mediante su propio testimonio o contestar el interrogatorio. Dicho foro concluyó que la información solicitada

por los demandados no cualificaba como información oficial ya que en ningún momento se solicitó información sobre el contenido de la investigación, sino que éstos sencillamente solicitaron se les indicara si se estaba llevando a cabo una investigación criminal en su contra. Resolvió, además, que el E.L.A. no demostró que al divulgar esta información se pusieran en riesgo derechos de terceros, los intereses del gobierno o la seguridad pública.

Denegada la reconsideración presentada por el E.L.A., éste acudió ante el Tribunal de Apelaciones mediante recurso de certiorari. El foro apelativo intermedio, mediante una sentencia de 31 de enero de 2003, modificó el dictamen del Tribunal de Primera Instancia y así modificado, lo confirmó. En lo pertinente, concluyó que la información solicitada por los demandados, es decir, si eran o no objeto de una investigación criminal, era pertinente a los fines de que éstos pudieran establecer las estrategias a seguir en el desarrollo del proceso, así como los potenciales remedios que podrían requerir del tribunal de instancia. En consecuencia, determinó que el E.L.A. tenía que divulgarle a los demandados la información solicitada.

Inconforme, el E.L.A. acudió ante nos mediante recurso de certiorari, señalando que el Tribunal de Apelaciones erró:

> ...al determinar que, con el fin de delinear su estrategia en el caso, la recurrida puede condicionar su participación en el descubrimiento de prueba hasta que el E.L.A. responda a requerimientos de ésta sobre la existencia de posibles investigaciones criminales en contra de las personas naturales que la componen, aún cuando la información solicitada no es pertinente ni a los méritos del caso ni al asunto de si dichas personas están expuestas a un riesgo real de responsabilidad criminal.

Acordamos revisar y expedimos el recurso solicitado. Ambas partes han comparecido y con el beneficio de sus argumentos, resolvemos.


II

Tanto la Constitución de Puerto Rico como la Constitución de los Estados Unidos garantizan el derecho de todo ciudadano contra la autoincriminación. *Pueblo v. Medina Hernández*, res. el 5 de febrero de 2003, _____ D.P.R. _____ (2003), 2003 J.T.S. 11, 2003 T.S.P.R. 8.

La Quinta Enmienda de la Constitución federal dispone que: "[n]o person shall be compelled in any criminal case to be a witness against himself". Por su parte, el Art. II, Sec. 11 de nuestra Constitución dispone que "[n]adie será obligado a incriminarse mediante su propio testimonio". L.P.R.A., Tomo I.

El derecho constitucional aludido es uno personal que prohíbe la producción compulsoria de las comunicaciones o de los testimonios del individuo. *Meléndez, F.E.I.*, 135 D.P.R. 610 (1994); *Pueblo v. Chaar Cacho*, 109 D.P.R. 316 (1980). Debemos enfatizar en este punto que **el privilegio a la no autoincriminación, sin lugar a dudas, es uno de los derechos más importantes y fundamentales de nuestro procedimiento criminal.**[15]

---

[15] Éste tiene su génesis en valores de importancia, tales como: obligar al Estado a llevar a cabo una investigación criminal efectiva, ya que no puede contar con testimonio autoincriminatorio compelido; evitar la contaminación del sistema judicial con métodos de investigación que tienen el potencial de violentar la dignidad humana; y eliminar mecanismos de represión. Ernesto L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Vol. I, Forum, 1991, sec. 3.1, pág. 118.

Sabido es que cuando una investigación criminal que está siendo realizada por agentes del orden público se centra sobre una persona en particular, y dicho sospechoso se encuentra bajo custodia, si los agentes pretenden interrogar al sospechoso, éstos están obligados a advertirle de una serie de derechos constitucionales que nuestro ordenamiento jurídico le garantiza. Entre otros derechos, el sospechoso de la comisión de delito debe ser advertido de su derecho contra la autoincriminación, es decir, que cualquier manifestación que él haga podrá luego ser utilizada en su contra durante el juicio que se le celebre. *Pueblo v. López Guzmán*, 131 D.P.R. 867 (1996); *Pueblo v. Falú Martínez*, 116 D.P.R. 828 (1986), *Rivera Escuté v. Jefe de Penitenciaría*, 92 D.P.R. 765 (1965).

Ahora bien, para resolver la controversia que está ante nos hay que precisar, en esencia, si resulta necesario que un individuo conozca si es objeto de una investigación criminal, para así estar en posición de invocar el privilegio contra la autoincriminación cuando es interrogado por el Estado en un procedimiento civil. En otras palabras, debemos resolver si un ciudadano puede invocar dicho privilegio, en ese tipo de procedimiento, aun desconociendo si es investigado criminalmente por los mismos hechos que dieron lugar al pleito civil. Para ello es necesario examinar, a su vez, en qué tipo de procedimiento puede invocarse el privilegio contra la autoincriminación.[16]

---

[16] Como se sabe, las interpretaciones judiciales del Tribunal Supremo federal en cuanto el contenido de los derechos fundamentales garantizados por la Constitución de los Estados Unidos sólo constituyen el mínimo de protección que estamos llamados a reconocer bajo nuestra propia Constitución. *Emp. Pur.*

**(Continúa . . .)**

Respecto al alcance del privilegio contra la autoincriminación, los profesores Wright, Miller y Marcus, en su conocida obra *Federal Practice and Procedure*, Civil 2d, West, 1994, § 2018, págs. 270-271, comentan que:

> The famous words of the Fifth Amendment, "no person … shall be compelled in any criminal case to be a witness against himself," have no obvious application to pretrial discovery in a civil action, but history has given the words a broader reading than is literally required.

Así, en el caso de *McCarthy v. Arndstein*, 266 U.S. 34 (1924), el Tribunal Supremo federal reconoció la aplicabilidad del mencionado precepto constitucional en los procedimientos civiles. Señaló entonces que:

> The Government insists, broadly, that the constitutional privilege against self-incrimination does not apply in any civil proceeding. The contrary must be accepted as settled. **The privilege is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it. The privilege protects a mere witness as fully as it does one who is also a party defendant.** (Énfasis suplido.)

Luego, en *Lefkowitz v. Turley*, 414 U.S. 70 (1973), el Tribunal Supremo de Estados Unidos reiteró la normativa que acabamos de reseñar. Allí indicó que:

> The [Fifth] Amendment not only protects the individual against being involuntary called as a witness against himself in a criminal prosecution **but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.** (Énfasis suplido.)

---

*Des., Inc. v. H. I. E.\_Tel.*, 150 D.P.R. 924 (2000). Por ello, más adelante examinaremos las decisiones federales pertinentes.

Sobre este punto expresa el profesor Ernesto Chiesa, *Derecho procesal penal de Puerto Rico y Estados Unidos*, *supra*, sec. 3.2, pág. 119:

> El privilegio contra la autoincriminación puede ser invocado en todo tipo de procedimiento gubernamental, sea civil, criminal, administrativo o legislativo. No se trata de que sólo un "acusado" puede invocar el privilegio. [...] **Se trata de un derecho de cualquier ciudadano, cuando se le interroga por autoridad gubernamental en cualquier tipo de procedimiento, no importa el tipo de investigación que se realice.** (Énfasis suplido.)

Pasemos ahora a aplicar las normas de derecho previamente reseñadas a los hechos específicos del presente caso.

III

Según señaláramos anteriormente, la contención de los demandados es que para ellos estar en condiciones de ejercer su derecho constitucional contra la autoincriminación en este procedimiento, es necesario que el Estado les informe si se encuentra realizando una investigación criminal en su contra. Tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones concluyeron que procedía dicho descubrimiento. No les asiste la razón. Veamos.

De todo lo antes expuesto se puede colegir con meridiana claridad, **que para que un ciudadano pueda invocar el privilegio contra la autoincriminación no es necesario que éste conozca si el Estado está llevando a cabo una investigación criminal en su contra.** Es decir, un individuo puede invocar su derecho contra la autoincriminación independientemente de que exista o no una investigación criminal en curso en su contra. Como vimos, todos los ciudadanos, no sólo el sospechoso de un delito bajo

investigación, están protegidos por la garantía constitucional contra la autoincriminación. **Lo verdaderamente relevante para que pueda invocarse dicho privilegio, no es si el individuo es objeto de una investigación criminal, sino el que exista la posibilidad de que la persona que es interrogada por las autoridades gubernamentales, con su respuesta o testimonio, se exponga a un procedimiento criminal en su contra en el futuro.**

En resumen, para que se active el privilegio contra la autoincriminación deben de concurrir dos (2) elementos: (1) que un ciudadano sea interrogado por el Estado en cualquier tipo de procedimiento, sea éste legislativo, administrativo o judicial, civil o penal; y (2) que exista la posibilidad de que si contesta las preguntas de las autoridades, se exponga a peligro real de responsabilidad criminal. Ausente cualquiera de estos requisitos, no procede invocar esta garantía constitucional.

La opinión mayoritaria, para llegar a su conclusión de que el Estado debe informar a los demandados si son objeto de una investigación criminal, recurre innecesariamente a la doctrina de la litigación paralela, esbozada en la jurisprudencia federal. La litigación paralela ocurre cuando existe la posibilidad de que se lleven a cabo procedimientos civiles o criminales que surjan de los mismos hechos o transacciones, ya sean éstos simultáneos o sucesivos. *S.E.C. v. Dresser Industries, Inc.*, 628 F.2d 1368, 1374 (C.A.D.C., 1980); Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 202 (1990). La jurisprudencia federal ha señalado que los tribunales pueden regular, o incluso paralizar, el descubrimiento de prueba en aras de evitar que el ciudadano se vea en la disyuntiva de perder el litigio civil con

tal de evitar autoincriminarse. *S.E.C. v. Dresser Industries, Inc., supra*, págs. 1375-1376; *U.S. v. Kordel*, 397 U.S. 1 (1970).

Ahora bien, un examen de la jurisprudencia federal <u>reciente</u> donde se abordan controversias relacionadas con procedimientos paralelos refleja una **tendencia a limitar la intervención de los tribunales para imponer restricciones u ordenar la paralización del pleito civil.** Más aún, el factor constante en todas las decisiones donde se invoca el privilegio a la no autoincriminación y donde se solicitan medidas protectoras en el litigio civil por llevarse a cabo procedimientos paralelos ha sido que los tribunales federales, independientemente de la procedencia de tales medidas protectoras o de una orden paralizando el procedimiento civil, ha reconocido el derecho de los ciudadanos a invocar el privilegio garantizado en la Quinta Enmienda de la Constitución federal. En síntesis, **independientemente de la existencia de un procedimiento o una investigación paralela o de la procedencia de una orden protectora en un descubrimiento de prueba, los ciudadanos pueden invocar su derecho a la no autoincriminación de entender que sus respuestas pueden ponerlos en riesgo de incurrir en responsabilidad criminal.**

*Así, en U.S. v. International Broth. of Treamsters*, 247 F.3d 370, 388 (C.A.2., N.Y., 2001), se resolvió que un ciudadano no tenía derecho a que se paralizara una vista administrativa mientras se culminaba una investigación criminal fundamentada en los mismos hechos que dieron lugar al procedimiento administrativo. De otra parte, en *F.T.C. v. J.K. Publications, Inc.*, 99 F.Supp.2d 1176, 1198 (C.D. Cal., 2000), al denegarse la

paralización de una demanda mientras finalizaba el juicio criminal, el tribunal indicó:

> [n]ot only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding.

Finalmente, en *U.S. v. Certain Real Property*, 986 F.2d 990, 997 (C.A.6, Mich., 1993), el tribunal, al denegar la paralización de una acción civil mientras se dilucidaba una acusación, señaló: "[t]he very fact of a parallel criminal proceeding, however, [does] not alone undercut [claimant's] privilege against self-incrimination, even though the pendency of the criminal action 'forced him to choose between preserving his privilege against self-incrimination and losing the civil suit'". (Llaves y citas en el original.) Véanse además *Walsh Securities, Inc. v. Cristo Property Management, Ltd.*, 7 F.Supp.2d 523 (D.N.J., 1998); *U.S. v. One 1990 Porsche*, 807 F.Supp. 371 (D.Md., 1992).

De lo anterior surge con meridiana claridad que un ciudadano puede invocar el privilegio contra la autoincriminación indistintamente del desarrollo de algún procedimiento o investigación paralela. Más aún, el **ejercicio y eficacia** de este derecho constitucional no depende de las medidas protectoras que el tribunal pueda tomar, discrecionalmente, con relación al descubrimiento de prueba en un litigio civil.

En el caso de marras nos encontramos ante un pleito civil en el que los demandados entienden que contestar algunas preguntas del interrogatorio cursado por el Estado podría ponerlos en riesgo de incurrir en responsabilidad criminal. **Esta circunstancia, <u>por</u>**

**sí sola**, **les permite a los demandados invocar el privilegio a la no autoincriminación, independientemente de si el Estado se encuentra llevando a cabo una investigación criminal contra alguno de ellos**. Dicha solución reconoce la factura más ancha de la que gozan los derechos fundamentales garantizados en la Constitución del Estado Libre Asociado y, a su vez, protege el interés público en las investigaciones criminales. *Emp. Pur. Des., Inc. V. H.I.E.T.E.L., supra.*[17]

Así pues, concluimos, que una vez el Estado les notificó a los demandados el interrogatorio objeto de la presente controversia, éstos debieron contestar el mismo, objetando aquellas preguntas que entendían los colocaban en riesgo de responsabilidad criminal. Era innecesario, entonces, conocer si como cuestión de hecho, el Estado ya estaba realizando una investigación criminal en su contra por los mismos hechos que dieron lugar a este procedimiento civil. En consecuencia, no podemos suscribir la opinión mayoritaria por entender que su efecto práctico —al fundamentar su conclusión en la doctrina de la litigación paralela— es minimizar la eficacia que a la luz de nuestra Constitución tiene el derecho contra la autoincriminación. La mayoría ha incidido ya que **en nuestra jurisdicción el ejercicio y la protección que ofrece el derecho a no autoincriminarse no depende de la existencia o la posibilidad de un procedimiento paralelo ni de que el Estado**

---

[17] El derecho fundamental a la no autoincriminación y el interés del Estado en la investigación y procesamiento criminal son perfectamente armonizables, permitiéndole al ciudadano invocar su privilegio y de esta forma abstenerse de contestar alguna pregunta o de proveer cualquier información que le ha resultado adversa y brindándole la oportunidad al gobierno de conducir una investigación que podría o no resultar en un procedimiento criminal.

**revele si existe una investigación en curso contra el ciudadano que invoca tal derecho.**

A la luz lo anterior, sostenemos que erraron los foros inferiores al condicionar la participación de los demandados en el descubrimiento de prueba, a que el E.L.A. revelara en primera instancia si existía o no una investigación en curso en contra de los aquí demandados.

Por los fundamentos antes expuestos, revocaríamos tanto el dictamen del tribunal de instancia como el del Tribunal de Apelaciones y devolveríamos el caso para la continuación de los procedimientos.


MIRIAM NAVEIRA MERLY
Jueza Presidenta