Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| LA CIMA HOMEOWNERS ASSOCIATION, INC.<br><br>Recurrido<br><br>V.<br><br>HÉCTOR JAVIER ROSARIO REYES Y OTROS<br><br>Peticionarios | KLCE202301233 | Recurso de *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2023CV02422<br><br>Sobre:<br><br>Sentencia Declaratoria, Injunction Preliminar y Permanente |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Marrero Guerrero

Marrero Guerrero, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 7 de diciembre de 2023.

-I-

Comparecen ante nos Héctor Javier Rosado Reyes, su esposa Aurea Barreto y la Sociedad Legal de Gananciales compuesta por ambos, Jorge Luis Medina Rivera, Sonia Alsina Orozco y Sheila J. Santiago Vega, su esposo Ángel Cores y la Sociedad Legal de Gananciales compuesta por ambos (parte recurrente) por virtud del presente recurso de *certiorari* y solicitan que revisemos una *Resolución* dictada y notificada el 11 de octubre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI)[1] y una *Orden* emitida por dicho foro el 30 de octubre de 2023.[2] Mediante la aludida *Resolución*, el TPI declaró No Ha Lugar a la desestimación por falta de parte indispensable que solicitó la parte recurrente en la demanda instada por La Cima Homeowners

---

[1] *Apéndice de Certiorari*, págs. 0134-0138.
[2] *Íd.* págs. 0228-0232. Archivada y notificada en autos el 1 de noviembre de 2023.

Association, Inc., (La Cima Homeowners o la parte recurrida). Por otro lado, por virtud de la mencionada *Orden*, el foro primario decretó que la parte recurrente tenía hasta las cinco de la tarde (5:00 p.m.) del 6 de noviembre de 2023 para contestar en su totalidad y expresar los fundamentos de negar los requerimientos de admisiones cursados por la parte recurrida. Conjunto con el *Certiorari*, la parte recurrente presentó una *Moción urgente en auxilio de jurisdicción.*

El 7 de noviembre de 2023, emitimos una *Resolución* en la que declaramos No Ha Lugar al petitorio de auxilio de jurisdicción y le concedimos diez (10) días a la parte recurrida para que expusiera su posición en torno a los méritos del recurso. Oportunamente, el 16 de noviembre de 2023, la parte recurrida sometió su *Alegato en oposición a recurso de certiorari.*

Con el beneficio de la comparecencia de ambas partes y por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* y modificamos la *Resolución* recurrida a los fines de que establecer la necesidad de que se enmiende la demanda para incluir como parte a las villas Condominio Montecillo I, Condominio Montecillo II, Condominio Montecillo Court y Condominio Montecillo Town Village y a los miembros de la pasada directiva de Montecillo Homeowners Association, Inc. (MHOA).

-II-

El caso ante nuestra consideración dimanó el 1 de agosto de 2023 cuando La Cima Homeowners incoó una *Demanda* sobre sentencia declaratoria, *injunction* preliminar y permanente contra la parte recurrente. En síntesis, alegó que MHOA es era corporación agrupada por titulares de cinco (5) villas: Condominio Montecillo I, Condominio Montecillo II, Condominio Montecillo Court, Condominio Town Village y la Urbanización La Cima, las cuales forman una comunidad con control de acceso que ubica en la

entrada del complejo Montecillo. Arguyó que dichas villas se rigen por la Escritura número trescientos cuarenta y cuatro (344) sobre Condiciones Restrictivas, otorgada el 20 de noviembre de 1992 en San Juan, Puerto Rico ante la notario Estela I. Vales Acosta (Escritura Núm. 344) y la Escritura número quinientos veintidós (522) sobre Declaración Suplementaria, otorgada el 20 de noviembre de 1996 en San Juan, Puerto Rico ante la misma notario público.

Esgrimió que se eligió a Héctor Javier Rosario Reyes del Condominio Montecillo Court; Jorge Luis Medina Rivera del Condominio Montecillo II; Sonia Alsina Orosco del Condominio Montecillo I y Sheila J. Santiago Vega del Condominio Town Village, como directivos de MHOA, presuntamente en contravención con la Escritura Núm. 344. Estableció que las antedichas personas se autoproclamaron directivos de MHOA y sustituyeron a los directivos electos, según comunicado por *Resolución* del 24 de enero de 2023. Alegó que la previa presidenta de MHOA la señora Maritza Esquilín Hernández, no convocó una reunión para celebrar la elección de la junta de directores, como establece la Escritura Núm. 344.

Además, apuntó que los actuales directivos estaban inhibidos de ser parte del cuerpo directivo de MHOA dado que, sus villas así como algunos codemandados adeudaban cuotas por concepto de mantenimiento por un periodo superior a treinta (30) días, en detrimento de las condiciones restrictivas dispuestas en la Escritura Núm. 344. Presuntamente, a diferencia de la Urbanización La Cima, las villas en las cuales residen los miembros de la parte recurrente, adeudan una cantidad ascendente a treinta y ocho mil doscientos dos dólares con cuarenta centavos ($38,202.40) por concepto de cuota de mantenimiento. Sostuvo que los autoproclamados directivos de MHOA tomaron acciones como: cambio de firmas autorizadas, retiro de fondos y cierre de la cuenta bancaria del organismo, intento de cambiar el sistema de vigilancia presencial a

electrónica, compra de equipos, aumentos de cuotas de mantenimiento, realización de referéndums no autorizados y reuniones sin convocatoria, en menoscabo de lo dispuesto en la Escritura Núm. 344. Manifestó que dichas acciones les causaron daños por arriesgar su seguridad, preocupación, desasosiego, disminución del valor de sus propiedades, entre otros, con la posibilidad de ser irreparables. Por ello, solicitaron varios remedios, siendo estos que:

> [D]eclare con lugar la demanda de Sentencia Declaratoria y determine que la elección de los demandados a formar parte de la junta de directores de [MHOA] es ilegal y por lo tanto nula, declare que sus actuaciones son ilegales y se revierta toda actuación realizada por la Junta de Directores demandada por ser nulas ab-initio por tanto se modifique y anule todo contrato realizado por los demandados y se restituyan en sus puestos a los directivos que ocupaban posiciones a enero de 2023 en la entidad [MHOA]; se ordene la paralización de la implantación del sistema de seguridad actual a uno virtual; se permita y se ordene la contratación de un Contador Público Autorizado (CPA) escogido por los demandantes y sufragados en su totalidad por los demandados con el propósito de auditar los estados financieros de [MHOA] desde que los demandados asumieron puestos directivos en dicha entidad sin fines de lucro a partir de febrero de 2023; se ordene la devolución de los fondos retirados de manera ilegal de la cuenta bancaria de [MHOA] y dicte el remedio interdictal provisional para que los demandados se abstengan de continuar tomando decisiones y en su consecuencia dicte Sentencia de Injunction Permanente, condene a los demandados solidariamente al pago a los demandantes de daños causados en la suma aproximada de $100,000.00 y además le imponga a los demandados el pago de las costas, gastos, se le impongan sanciones por razón de temeridad y honorarios de abogados en la suma mínima de $25,000.00[.][3]

Tras varios trámites procesales, el 29 de agosto de 2023, el TPI emitió una orden protectora al amparo de la Regla 56.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 56.5, para que la parte recurrente desistiera de cambiar el sistema de vigilancia presencial a electrónica hasta la celebración de la vista pautada para el 29 de septiembre de 2023.[4] Dicho dictamen se mantuvo en pleno vigor

---

[3] *Íd.* págs. 017-018.
[4] *Íd.* págs. 0101-A-101-B.

hasta la celebración de la vista de *injunction* preliminar, según *Orden* dictada el 2 de octubre de 2023.[5]

Con relación a una *Moción de desestimación* radicada el 18 de septiembre de 2023 por la parte recurrente, esta estableció que era la única villa de MHOA que alegó ilegalidad en la selección de la junta de directores.[6] Asimismo, planteó que se debía desestimar la causa de acción en su contra dado que no se incluyó como parte al Condominio Montecillo Court, Condominio Montecillo I, Condominio Montecillo II y Condominio Town Village ni a los previos directivos de MHOA, siendo estos partes indispensables debido a que les correspondían defenderse de las alegaciones de la demanda y se les violaba el debido proceso de ley. El 5 de octubre de 2023, la parte recurrida presentó su *Oposición a moción para desestimar la demanda.*[7] En esencia, La Cima Homeowners argumentó que la demanda no adujo alegación en contra de las demás villas como entidad, sino contra los directivos de MHOA, en su carácter personal por las violaciones a las restricciones voluntarias contenidas en la Escritura Núm. 344. Por ello, entendió que el remedio que buscó la parte recurrida no afectaría los derechos de ninguna otra parte ausente. En la alternativa, indicó que, del TPI determinar que las demás villas y los previos directivos de MHOA eran parte indispensable que se debe acumular, se le conceda un término razonable para enmendar las alegaciones. En respuesta, el 10 de octubre de 2023, la parte recurrente presentó una *Breve réplica a la oposición de la parte demandante sobre la moción de desestimación,* en la que reiteró su posición.[8] Así las cosas, el 11 de octubre de 2023, el TPI dictó una *Resolución* en la que declaró No Ha Lugar a la moción de desestimación, debido a que entendió que podía

---

[5] *Íd.* págs. 0111-A.
[6] *Íd.* págs. 0102-0108.
[7] *Íd.* págs. 0112-0128.
[8] *Íd.* págs. 0129-0131.

atender la controversia sin la comparecencia de las partes que se adujeron como indispensables.[9] Esto, dado que el TPI vislumbró que la controversia se reducía a lo siguiente:

> [C]oncluir a base de la prueba que en efecto no eran morosos por lo que su elección es legítima y del mismo modo sus actuaciones o[,] por el contrario, eran morosos por lo que su elección es nula por ser contrario a las disposiciones [de la] Escritura aplicable. De ser así, el Tribunal y las partes tienen el remedio a su alcance para elegir a la nueva Junta.[10]

Respecto al requerimiento de admisiones y producción de documentos cursada el 1 de septiembre de 2023 por La Cima Homeowners,[11] el 11 de septiembre de 2023, la parte recurrente solicitó una prórroga de treinta (30) días para contestar el mismo.[12] En respuesta, el 12 de septiembre de 2023, el TPI emitió una *Orden* en la que declaró No Ha Lugar a la prórroga solicitada y le concedió hasta el 18 de septiembre de 2023, bajo pena de anotación de rebeldía.[13] No obstante, el 21 de septiembre de 2023, la parte recurrente interpuso una moción en la que objetó el requerimiento de admisiones al entender que contestar noventa y nueve (99) incisos en un término de veinte (20) días era una violación al debido proceso por no cumplir con el término dispuesto en la Regla 33 de Procedimiento Civil, *supra*, R.33.[14] Además, alegó que la codemandada Sheila J. Santiago Vega no fue notificada del requerimiento dado que su dirección de correo electrónico estaba incompleta y que algunas aseveraciones requerían que se acompañaran documentos que no se les incluyó. En igual fecha, el TPI le concedió veinte (20) días a la parte recurrente para responder al requerimiento de prueba.[15] El 12 de octubre de 2023, la parte

---

[9] *Íd.* págs. 0134-0138.
[10] *Íd.* pág. 0137.
[11] Tomamos conocimiento judicial del expediente digital del caso CA2023CV02422 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada Núm. 26.
[12] Entrada Núm. 30 en SUMAC.
[13] Entrada Núm. 33 en SUMAC. Archivada y notificada en autos el 13 de septiembre de 2023.
[14] *Apéndice de Certiorari*, págs. 0109-0110.
[15] Entrada Núm. 48 en SUMAC. Archivada y notificada en autos el 22 de septiembre de 2023.

recurrente informó al TPI que remitieron a la parte recurrida los requerimientos de admisiones.[16] Posteriormente, el 24 de octubre de 2023, La Cima Homeowners señaló que la parte recurrente no contestó adecuadamente los múltiples requerimientos de admisiones; negaron documentos y asuntos obvios y demostraron una actitud temeraria para obstaculizar el descubrimiento de prueba.[17] Por cuanto, solicitó que el TPI diera por admitido los requerimientos que la parte no brindó contestación y/o se eliminaran las alegaciones de la parte recurrente, más que impusiera en concepto de honorarios de abogados, una cuantía no menor de cinco mil dólares ($5,000.00). Ulteriormente, el 30 de octubre de 2023, el TPI emitió una *Orden* en la que, en suma, resolvió que la parte recurrente tenía que contestar en su totalidad las distintas alegaciones contenidas en el documento cursado por la parte recurrida y expresar los fundamentos.[18] El foro primario le concedió hasta las cinco de la tarde (5:00 p.m.) del 6 de noviembre de 2023, bajo la pena de sanciones y/o dar por admitidas las alegaciones.

Inconforme, el 8 de noviembre de 2023, la parte recurrente acudió ante esta Curia mediante un *Certiorari,* en el que le imputó al TPI la comisión de los siguientes tres (3) señalamientos de error:

**A. ERRÓ EL TPI AL PERMITIR LA VISTA DE *INJUNCTION* PRELIMINAR Y PERMANENTE ANTE LA EXISTENCIA DE UNA ORDEN DE CESE Y DESISTA BAJO LA REGLA 56, Y PERMITIR QUE DICHA VISTA SEA ANÁLOGA A UN JUICIO.**

**B. ERRÓ EL TPI AL PERMITIR DESCUBRIMIENTO DE PRUEBA PARA VISTA DE *INJUNCTION* BAJO LA REGLA 57 DE PROCEDIMIENTO CIVIL E INCUMPLIMIENTO CON LA REGLA 34 DE PROCEDIMIENTO CIVIL.**

**C. ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA MOCIÓN POR FALTA DE PARTE INDISPENSABLE EN LA SENTENCIA DECLARATORIA.**

---

[16] Entrada Núm. 68 en SUMAC.
[17] *Apéndice de Certiorari,* págs. 0140-0227.
[18] *Íd.* págs. 0228-232. Archivada y notificada en autos el 1 de noviembre de 2023.

En resumen, alegó que, por virtud de la orden protectora del 29 de septiembre de 2023, extendida por la *Orden* del 2 de octubre de 2023, ya se aseguró y salvaguardó la efectividad de la sentencia que recaiga en el pleito y que, por ello, la parte recurrida no poseía un daño irreparable para dar lugar al *injunction* a la luz de la Regla 56 de Procedimiento Civil, *supra*, R. 56. Precisó que debido al requerimiento de admisiones cursado por la parte recurrida, dicha parte no contó con prueba sobre el daño irreparable que sufriría si el TPI no expedía el *injunction*. Por último, subrayó que no se acumuló como parte indispensable al resto de las villas, ni a los previos directivos de MHOA. Por cuanto, peticionó que expidamos el recurso y declaremos con lugar la *Moción de desestimación.*

Por su parte, el 16 de noviembre de 2023, La Cima Homeowners presentó su *Alegato en oposición a recurso de certiorari* y, referente al primer señalamiento de error, expresó que se tornó académico, puesto que la parte recurrente se allanó a la orden de cese y desista emitida por el TPI. En torno al segundo señalamiento de error, estableció que debido a la discrecionalidad que cobija el descubrimiento de prueba, esta Curia carecía de facultad para revisar la determinación del TPI, excepto prejuicio o parcialidad, craso abuso de discreción, o equivocación en la aplicación del derecho. En relación con el tercer señalamiento de error, reiteró que la controversia se puede adjudicar sin la comparecencia del resto de las villas y de los previos directivos de MHOA.

-III-

-A-

El *certiorari* es un recurso extraordinario cuya característica se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391 (2021); *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307

(2012). Este Tribunal tiene la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del TPI. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83 (2008). En los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1. *McNeil Healthcare v. Mun. Las Piedras I, supra*; *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478 (2019). La mencionada Regla dispone que sólo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo". *800 Ponce de León v. AIJ, supra.* Por su parte, la Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

-B-

El mecanismo procesal de acumulación de parte indispensable está predicado en la Regla 16.1 de Procedimiento Civil, *supra*, R. 16.1. Una parte indispensable es aquella sin cuya presencia no se puede adjudicar el pleito debido a que sus derechos quedarán afectados. R. Hernández Colón, *Práctica jurídica de Puerto*

*Rico: Derecho procesal civil,* 6ta ed., San Juan: Lexisnexis de Puerto Rico, Inc., 2017, pág. 165. Por ello, la aludida Regla 16.1 de Procedimiento Civil, *supra,* R. 16.1, dispone que "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda".

No obstante, no se trata de cualquier interés en el pleito, puesto que debe ser un interés que impida la concesión de un derecho adecuado sin afectar o destruir radicalmente los derechos de la parte. *López García v. López García,* 200 DPR 50, 64 (2018). A la vez, tiene que ser un interés real e inmediato, no futuro ni meras especulaciones. *Íd.*

Esto responde a tres principios: la protección constitucional que impide que una persona sea privada de su libertad y propiedad sin un debido proceso de ley; la necesidad de que el dictamen judicial sea completo y evitar la multiplicidad de pleitos. *FCPR v. ELA et al.,* 2023 TSPR 26, 211 DPR 521, __ (2023); *RPR & BJJ, Ex parte,* 207 DPR 389, 407 (2021); *Cirino González v. Adm. Corrección et al.,* 190 DPR 14, 46 (2014).

El Tribunal Supremo estableció que, "[a]l determinar si una persona es una parte indispensable en un pleito, se requiere un enfoque pragmático e individualizado, a tenor con las particularidades de cada caso". *FCPR v. ELA et al., supra*; *García Colón et al. v. Sucn. González,* 178 DPR 527, 549 (2010). En tal sentido, el tribunal deberá evaluar los intereses envueltos en cada caso y distinguir entre los diversos géneros de casos. Esto, de acuerdo con el "tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad", *FCPR v. ELA et al., supra, citando a Sánchez v. Sánchez,* 154 DPR 645, 678 (2001) y, "si el tribunal 'podrá hacer justicia y conceder un remedio

final y completo sin afectar los intereses del ausente'". *Íd. citando a Pérez Rosa v. Morales Rosado,* 172 DPR 216, 223 (2007).

A su vez, es norma trillada que la ausencia de una parte indispensable priva de jurisdicción al tribunal dado que la sentencia es nula. *FCPR v. ELA et al., supra; Unysis PR, Inc. v. Ramallo Brother Printing, Inc.,* 128 DPR 842, 859 (1991). Por ello, el máximo foro judicial estableció lo siguiente:

> La falta de parte indispensable constituye un planteamiento tan relevante y vital que puede presentarse en cualquier momento, es decir, se puede presentar por primera vez en apelación e, incluso, un tribunal apelativo puede suscitarlo *sua sponte,* ya que en ausencia de parte indispensable, el tribunal carece de jurisdicción. *Romero v. SLG Reyes,* 164 DPR 721, 733 (2005).

Cuando se determina que una parte indispensable está ausente en el pleito, la acción debe ser desestimada sin perjuicio. *Íd.* pág. 734. No obstante, a solicitud de parte y sujeto a que el tribunal pueda ejercer jurisdicción sobre dicha parte indispensable ausente, se podrá incluir en el pleito sin desestimar la acción. *Cirino González v. Adm. Corrección et al., supra,* págs. 46-47.

-C-

La Regla 33 de Procedimiento Civil, *supra,* R. 33, rige lo concerniente a los requerimientos de admisiones, mecanismo que "persigue el propósito de aligerar los procedimientos, definiendo y limitando las controversias del caso, proporcionando así un cuadro más claro sobre las mismas" *Audiovisual Lang. V. Sist. Est. Natal Hnos.,* 144 DPR 563, 571 (1997). Este instrumento procesal permite que una parte requiera por escrito a otra que admita la veracidad de cualquiera materia dentro del alcance de la Regla 23.1 de Procedimiento Civil, *supra,* R. 23.1 sobre descubrimiento de prueba. Por otra parte, se ha establecido que la admisión realizada "releva a la parte adversa de tener que presentar en el juicio prueba del hecho admitido y de esta forma propicia que se acorte la audiencia y no se incurran en gastos innecesarios". *Rivera Prudencio v. Mun. De San*

*Juan,* 170 DPR 149, 171 (2007). La parte interpelada a un requerimiento de prueba tiene un término de veinte (20) días, de lo contrario, las cuestiones sobre las que se le solicitó admisión se tendrán automáticamente por admitidas. *Íd.* págs. 171-172. Por cuanto, existe "un deber afirmativo de responder y de efectuar las gestiones necesarias para obtener la información para admitir o negar". *Íd.* pág. 172.

Por otro lado, en el ordenamiento jurídico procesal puertorriqueño se facilita el descubrimiento de prueba para que el juzgador esté en mejor posición para resolver un pleito de forma justa. *ELA v. Casta,* 162 DPR 1, 9 (2004). Además, allana las circunstancias para "la tramitación de los pleitos y evitar los inconvenientes, sorpresas e injusticias que surgen cuando las partes ignoran hasta el día de la vista las cuestiones y los hechos que en realidad son objeto del litigio". *Íd.* Por ello, el alcance del descubrimiento de prueba es amplio y liberal. *Íd., Rodríguez v. Syntex,* 160 DPR 364, 394 (2003). Como norma general, las partes pueden hacer descubrimiento de prueba sobre cualquier materia, con las limitaciones de que la información sea pertinente y que no aplique alguna de las reglas de privilegios evidenciarios. *ELA v. Casta, supra,* pág. 10; *General Electric v. Concessionaries,* 118 DPR 32, 38-39 (1986). En este sentido, "los tribunales de instancia tienen amplia discreción para regular el ámbito del descubrimiento, pues es su obligación garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes". *Rivera y otros v. Bco. Popular,* 152 DPR 140, 154 (2000). Así, los tribunales revisores no deben interferir con la amplia facultad del foro primario, excepto haya actuado con perjuicio o parcialidad, haya incurrido en un craso abuso de discreción o se haya equivocado en la interpretación o aplicación del derecho. *Íd.*

-D-

El Código Civil de Puerto Rico, 31 LPRA secs. 8081-8087 *et seq.,* rige lo atinente a las restricciones privadas sobre fincas, antes denominadas servidumbres en equidad. Dispone que "[s]on restricciones voluntarias de carácter real aquellas limitaciones de uso, construcción y ornato o fines análogos que se imponen a las fincas . . .". *Íd.* sec. 8081. Para que las restricciones privadas sobre las fincas sean válidas y eficaces, deben ser: (a) razonables, (b) obedecer a un plan general de mejoras; (c) ser compatibles con la política pública sobre uso de terrenos; (d) constar de manera específica en un instrumento público y (e) estar inscritas en el Registro de la Propiedad. *Íd.* sec. 8082. Una vez constituidas, instituyen derechos reales oponibles *erga omnes*, por lo que no debe permitirse conducta prohibida por dichas restricciones privadas. *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 327-328 (2021). De igual manera, el Código Civil de Puerto Rico regula las maneras mediante las cuales se pueden modificar o extinguir las restricciones privadas sobre fines, siendo:

> (a) en la forma y por las causas dispuestas en el acto jurídico que las establece;
>
> (b) por acuerdo unánime de los interesados, ya sea mediante la eliminación total o parcial de las restricciones o mediante la constitución de nuevas restricciones que alteran las anteriores;
>
> (c) por efecto del tiempo o por realizarse la condición, si así se constituyeron;
>
> (d) por renuncia o abandono de los propietarios que reciben los beneficios de las restricciones mediante conducta que demuestre una intención de renunciar a ellos o abandonarlos;
>
> (e) por expropiación forzosa, si las restricciones son incompatibles con el uso público de la finca expropiada; y
>
> (f) por cambios radicales del vecindario. *Íd.* sec. 8086.

Por ello, "[p]ara hacer efectivos sus derechos e impedir violaciones a las limitaciones impuestas, los dueños de predios sujetos a [restricciones privadas sobre fincas] tienen disponible el

recurso de *injunction*. *SLG Fernández-Bernal v. RAD-MAN et al.*, *supra*, pág. 328.

-E-

El *injunction* es un recurso extraordinario que está regulado por la Regla 57 de Procedimiento Civil, *supra*, R. 57 y por el Código de Enjuiciamiento Civil, 32 LPRA secs. 3421 *et seq.* El Artículo 675 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3521 reconoce que un *injunction* "es un mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para que se abstenga de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra". En otras palabras, el *injunction* es un remedio judicial "dirigido principalmente contra actos futuros que amenazan ser cometidos o que se anticipa que serán cometidos". *VDE Corporation v. F&R Contractors*, 180 DPR 21, 40 (2010).

Los tribunales pueden dictar un entredicho provisional, *injunction* preliminar o permanente, siempre que se cumpla con la Regla 57 de Procedimiento Civil, *supra*, R. 57. *Meléndez de León et al. v. Keleher et al.*, 200 DPR 740, 755-756 (2018). El *injunction* preliminar se emite previo al juicio en su fondo y tiene el propósito de mantener el estatus actual hasta la celebración del juicio, sin que se produzca una situación que convierta la sentencia en académica o que en el entremedio se ocasionen daños a quien peticiona el recurso extraordinario. D. Rivé Rivera, *Recursos extraordinarios*, 2da. ed., San Juan: Programa de Educación Legal Continua de la Universidad Interamericana de Puerto Rico, 1996, pág. 21. Para conceder el remedio de *injunction* preliminar, se debe considerar:

> (a) la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el injunction;
>
> (b) su irreparabilidad o la existencia de un remedio adecuado en ley;

(c) la probabilidad de que la parte promovente prevalezca en los méritos;

(d) la probabilidad de que la causa se torne académica

(e) el posible impacto sobre el interés público.
*Asoc. Vec. V. Caparra v. Asoc. Fom. Educ.*, 173 DPR 304, 319 (2008).

Estos requisitos no son absolutos, dado que la concesión del *injunction* preliminar descansa en la sana discreción judicial, de acuerdo con los intereses de las partes involucradas. A la vez, es un recurso que se debe otorgar con mesura, "únicamente ante una demostración de clara e inequívoca violación de un derecho". *Next Step Medical v. Bromedicon et al.*, 190 DPR 474, 487 (2014). Ante esto, "**la determinación del tribunal no se revocará en apelación, a menos que se demuestre que el foro abusó de su facultad**". *Íd.* (Énfasis nuestro).

La vista sobre *injunction* preliminar no es un juicio en sus méritos, por lo que se permite presentar prueba sin que sea un requisito cumplir con las Reglas de Evidencia, 32 LPRA Ap. VI, secs. 101 *et seq.* D. Rivé Rivera, *supra*, pág. 37.

Por su parte, un *injunction* permanente requiere la celebración de vista y la evaluación de criterios adicionales como: (a) si el peticionario ha prevalecido en un juicio en sus méritos; (b) si el peticionario posee algún remedio adecuado en ley; (c) el interés público envuelto y (4) el balance de equidades. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008).

La parte promovente de un *injunction* debe demostrar que, de no concederse el mismo, sufrirá un daño irreparable que no puede ser satisfecho mediante los remedios legales disponibles. *VDE Corporation v. F&R Contractors*, *supra*. Por ello, los tribunales deben divisar si "la acción connota o no un agravio de patente intensidad al derecho del individuo que reclame urgente reparación". *Íd.*

Ahora bien, cuando se vindica las disposiciones de las restricciones privadas sobre fincas mediante un *injunction*

permanente, sólo se debe demostrar la violación a las restricciones. *Asoc. Vec. V. Caparra v. Asoc. Fom. Educ., supra*, pág. 321; *Asoc. Vec. Urb. Huyke v. Bco. Santander*, 157 DPR 521, 537 (2002). Es inmaterial probar si la parte peticionaria sufrió un daño irreparable o si la ley carece de un remedio adecuado en ley. *Asoc. Vec. V. Caparra v. Asoc. Fom. Educ., supra*. Por ello, "el *injunction* es el remedio adecuado para hacer valer las disposiciones de una [restricción privada sobre finca]". *Íd.*

-IV-

Tras evaluar la totalidad del expediente del caso ante nuestra consideración, nos encontramos ante una controversia susceptible de revisión mediante recurso de *certiorari*, conforme la Regla 52.1 de Procedimiento Civil, supra, R. 52.1, dado que se recurrió ante dos dictámenes interlocutorios emitidos por el TPI. Establecido esto, procedemos a analizar los errores señalados por la parte recurrente.

En los primeros dos errores imputados al TPI, la parte recurrente estableció que el foro primario incidió en permitir la vista de *injunction* ante la existencia de una orden de cese y desista y en acceder a que se descubra prueba para dicha vista. De un análisis sosegado de los autos y conforme con los criterios esbozados en la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1 y de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R. 40, resolvemos que debemos abstenernos de ejercer nuestra función revisora. No atisbamos error alguno que amerite nuestra intervención, puesto que el TPI no incurrió en error, prejuicio, parcialidad, un craso abuso de su discreción ni equivocación en la aplicación del derecho al permitir la vista de *injunction* y el descubrimiento de prueba para dicha vista. Recordamos que el descubrimiento de prueba versa sobre un asunto discrecional del TPI con el propósito de resolver el pleito de forma justa.

Por otro lado, como tercer error, la parte recurrente estableció que el TPI no debió declarar No Ha Lugar la moción de desestimación por falta de parte indispensable. Resolvemos que erró el TPI al entender que las villas Montecillo I, Montecillo II, Montecillo Court y Montecillo Town Village y los previos directivos de MHOA no debieron ser incluidos como parte en el caso de marras. Sépase que la parte recurrida solicitó remedios que inciden sobre las aludidas villas como la modificación de contratos y que pueden revertir las acciones tomadas por los previos directivos de MHOA. Las aludidas villas y los previos directivos de MHOA son partes indispensables dado que tienen un interés real e inmediato en la resolución de esta controversia. Empero, en aras de la economía procesal, se devuelve el caso al TPI para que proceda a autorizar que se enmiende la demanda y se incluya a las antes mencionadas villas y a los previos directivos de MHOA como parte, evitando de este modo, la desestimación de la acción. Véase *Cirino González v. Adm. Corrección et al.*, *supra*, págs. 46-47. Por cuanto, instruimos al TPI para que le conceda a la parte recurrida un plazo razonable para que enmiende la demanda a los fines de incluir a las referidas villas y previos directivos como parte demandante.

-V-

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se modifica la *Resolución* dictada el 11 de octubre de 2023 para que deje sin efecto lo resuelto respecto a que Montecillo I, Montecillo II, Montecillo Court y Montecillo Town Village y a los previos directivos de MHOA no eran parte indispensable en la demanda. En mérito de lo anterior, determinamos que las villas antes aludidas y los previos directivos son partes indispensables en el caso de marras. Por otro lado, se confirma la *Orden* emitida el 30 de octubre de 2023.

Se devuelve el caso para que el TPI continúe con los procedimientos de conformidad con lo aquí dispuesto.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones