Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ENRIQUE RODRÍGUEZ NARVÁEZ Y OTROS<br><br>**PETICIONARIO**<br><br>v.<br><br>BERMÚDEZ, LONGO, DÍAZ-MASSO, LLC Y OTROS<br><br>**RECURRIDOS** | KLCE202401048 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm. SJ2023CV08698<br><br>Sobre: Daños |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

# **RESOLUCIÓN**

En San Juan, Puerto Rico, a 28 de octubre de 2024.

## **I.**

El 27 de septiembre de 2024, el señor Enrique Rodríguez Narváez, la señora Myrna Iris Rivera Ortiz, el señor Carlos García Vélez, la señora Ingrid Gisela Rodriguez Rivera y sus respectivas sociedades de gananciales (peticionarios) presentaron una petición de *Certiorari* en la que solicitaron que revoquemos una *Resolución* emitida, notificada y archivada digitalmente en autos por el Tribunal de Primera Instancia, Sala Superior de Guayama (TPI o foro primario) el 6 de agosto de 2024.[1] En el dictamen, el TPI no autorizó el uso de prueba pericial por los peticionarios por incumplir con sus órdenes respecto a informar el nombre de los peritos y la presentación del informe pericial en el pleito sobre daños que conducen en contra de Bermúdez, Longo, Díaz-Masso LLC (BLDM), General Sewer & Contractor Services Corp. (General Sewer) y Autoridad Acueductos y Alcantarillados de Puerto Rico (AAA) (en

---

[1] Apéndice de la petición de *Certiorari*, Anejo X, pág. 48.

conjunto, recurridos). Tampoco se solicitó prórroga para cumplir con las órdenes del Tribunal en lo relacionado a este asunto.

El 1 de octubre de 2024, emitimos una *Resolución* en la que le concedimos a los recurridos un término de (10) días para expresar su posición sobre los méritos del recurso.

El 15 de octubre de 2024, BLDM radicó una *Moción solicitando breve prórroga para exponer su posición* en la que solicitó una prórroga de tres (3) días para presentar su posición sobre el recurso de epígrafe.

El 17 de octubre de 2024, emitimos una *Resolución* en la que le concedimos a BLDM la breve prórroga solicitada.

Ese mismo día, BLDM presentó un *Alegato de la parte apelada* en la que solicitó que deneguemos la expedición del *Certiorari*, al ser correcta en derecho la determinación del foro recurrido.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y, en adelante, pormenorizamos los hechos procesales atinentes a la petición de *Certiorari*.

**II.**

El 14 de septiembre de 2023, los peticionarios radicaron una *Demanda [por] daños a propiedad y daños y perjuicios* en la que alegaron que la AAA había expropiado parte de sus fincas y había contratado a General Sewer para realizar arreglos en ellas.[2] Durante estos trabajos, la propiedad de uno de los peticionarios, que incluía charcas y tuberías subterráneas para camarones, así como terrenos arrendados para ganado, alegadamente sufrió daños estimados en $247,179. También, adujeron que la AAA era responsable solidariamente por los daños.

Posteriormente, el 18 de octubre de 2023, los peticionarios presentaron una *Demanda enmendada de daños a propiedad y*

---

[2] Íd., Anejo I, págs. 1-4.

*daños y perjuicios* en la que, entre otras cosas, reclamaron que la AAA, debido a la condición restrictiva de la servidumbre de paso, tenía la obligación de devolver el terreno a su estado original después de los trabajos realizados y solicitaron compensación para restaurar los terrenos afectados.[3]

El 29 de enero de 2024, General Sewer radicó una *Contestación a Demanda enmendada* en la que, en síntesis, negó responsabilidad por los daños.[4] Según expuso, no era responsable de los planos o diseños del proyecto, ni de las máquinas utilizadas en los trabajos. Asimismo, precisó que las instrucciones provenían de BLDM y que las piscinas de agua en la propiedad habían estado vacías por años. Finalmente, cuestionó la magnitud de los daños alegados.

Ese mismo día, General Sewer también presentó una *Demanda contra coparte* en la que arguyó que cualquier responsabilidad recaía en BLDM, ya que dicha compañía fue la que proporcionó las instrucciones para el proyecto.[5] Al igual, argumentó que las piscinas de agua y las tuberías estaban en desuso o eran obsoletas y que los arrendamientos de pasto para ganado no fueron afectados.

El 5 de febrero de 2024, BLDM radicó una *Contestación a Demanda enmendada* en la que adujo que el diseño del plan fue responsabilidad de otra compañía que no se encontraba demandada.[6] Asimismo, afirmó que las máquinas utilizadas en los trabajos no eran su responsabilidad, sino del peticionario. También, reiteró que las piscinas habían estado vacías por años y que el pasto de ganado no sufrió daños. Además, señaló que el terreno no se encontraba abandonado, sino en mantenimiento.

---

[3] Íd., Anejo II, págs. 5-9.
[4] Íd., Anejo III, págs. 10-13.
[5] Íd., Anejo IV, págs. 14-15
[6] Íd., Anejo V, págs. 16-21.

El 6 de febrero de 2024, la AAA presentó una *Contestación a Demanda enmendada* en la que esbozó que tenía inmunidad y derecho a utilizar el terreno expropiado para cualquier necesidad relacionada con las tuberías.[7] A su vez, defendió que la servidumbre era propiedad de la AAA y que podía utilizarla como fuera necesario. Finalmente, argumentó que no era cocausante de los daños, ya que cualquier responsabilidad recaía en los contratistas.

El 4 de marzo de 2024, los peticionarios radicaron una *Moción de prórroga* en la que solicitaron al TPI que les concediera un término adicional de treinta (30) días para contestar un pliego de interrogatorio que les cursó BLDM el 6 de febrero de 2024.[8]

El 11 de marzo de 2024, el TPI emitió, notificó y archivó digitalmente en autos una *Orden* en la declaró Ha Lugar la prórroga solicitada por los peticionarios.[9]

Se recogió en una *Minuta* de la vista de Conferencia Inicial celebrada el 12 de marzo de 2024, lo siguiente:

- Concedió hasta el **13 de mayo de 2024** a las partes para que **informen la fecha, lugar, hora y método de las deposiciones** de los testigos, así como, de las partes mencionadas en el informe de conferencia inicial.
- **La parte demandante** deberá **anunciar a su perito** antes del **13 de mayo de 2024**. **Apercibió que finalizado el término no se aceptará perito no anunciado.**
- Concedió **20 días**, a partir de hoy, **a las partes** para **solicitar evidencia adicional** que no esté en el informe de conferencia inicial.
- La **parte demandante** deberá **notificar el informe pericial** antes del **14 de junio de 2024**.
- Instruyó a las partes a que de surgir alguna situación que requiera termino adicional, deberán informar al Tribunal durante el termino o antes de finalizar el mismo. **Apercibió a las partes que el incumplimiento podría conllevar sanciones.**
- **Señaló la Vista Estado de los Procedimiento para el 2 de julio de 2024 a las 9:30 AM por videoconferencia.** La fecha fue hábil en el calendario de los abogados.[10] (Énfasis en el original)

---

[7] Íd., Anejo VI, págs. 22-38
[8] Apéndice del *Alegato de la parte apelada*, pág. 2.
[9] Íd., pág. 3
[10] Transcrita y notificada digitalmente el 13 de marzo de 2024. Íd., págs. 4-6.

El 13 de junio de 2024, General Sewer presentó una *Moción en solicitud de orden* en la que solicitó al TPI que les ordenara a los peticionarios a comunicarse con las partes para indicar las fechas que tenían disponibles para llevar a cabo las deposiciones.[11] Según explicó, los peticionarios no respondieron a diversas solicitudes para pautar las referidas deposiciones.

El 18 de junio de 2024, el TPI emitió una *Orden* en la que le ordenó a los peticionarios comunicarse con las partes, so pena de desacato, para confirmar su disponibilidad para comenzar las deposiciones.[12] Para ello, les concedió diez (10) días.

El 2 de julio de 2024, el TPI notificó digitalmente una *Minuta* en la que recogió las incidencias de una conferencia celebrada ese mismo día y consignó que le extendió a los peticionarios el término para contestar los interrogatorios hasta el 11 de julio de 2024 y les advirtió que si no cumplían habrían sanciones.[13] A su vez, reseñó que, luego de turno posterior, las partes pudieron coordinar las fechas para celebrar la deposición de los peticionarios. Por último, el foro primario les concedió a las partes hasta el 26 de julio de 2024 para informar las personas que serían depuestas. **El TPI consignó que se concedió hasta el 13 de mayo de 2024 para informar perito.**

El 29 de julio de 2024, la AAA y General Sewer radicaron una *Moción conjunta en cumplimiento con orden* en la que sometieron los nombres de las personas que deseaban deponer, señalaron que los peticionarios incumplieron con la fecha límite para anunciar su perito y, por consiguiente, solicitaron que no se permitiera su presentación.[14] En la alternativa, argumentaron que procedía permitir que se le tomara su deposición.

---

[11] Íd., págs. 9-18.
[12] Notificada y archivada en autos digitalmente el 21 de junio de 2024. Íd., pág. 19.
[13] Apéndice de la petición de *Certiorari*, Anejo VIII, págs. 43-44.
[14] Íd., Anejo IX, págs. 45-47.

El 31 de julio de 2024, los peticionarios presentaron una *Oposición parcial a moción titulada "Moción conjunta en cumplimiento con orden"* en la que argumentaron que habían notificado los nombres de los peritos en tiempo hábil.[15] También, señalaron que habían cumplido con las órdenes del TPI al contestar los interrogatorios antes del 11 de julio de 2024, evitando así sanciones. Por ello, solicitaron que se rechazara la eliminación de los peritos.

El 6 de agosto de 2024, el TPI emitió la *Resolución* recurrida en la que no autorizó el uso de prueba pericial por los peticionarios.[16] En el dictamen, consignó expresamente lo siguiente:

> La fecha para anunciar peritos culminó el 13 de mayo de 2024, tal y como se programó en el plan de trabajo establecido en la vista del 12 de marzo de 2024. En adición la parte demandante tampoco cumplió con la presentación del informe pericial antes del 14 de junio de 2024. En ningún momento se solicitó prórroga para su cumplimiento y al día de hoy tampoco se ha informado la entrega del informe pericial. Por lo tanto, ante el incumplimiento con las órdenes del Tribunal y del plan de trabajo establecido, y para evitar que se siga retrasando los procedimientos, no se autoriza el uso de la prueba pericial en este asunto.[17]

El 21 de agosto de 2024, los peticionarios radicaron una *Moción de reconsideración* en la que adujeron que la consecuencia de la falta de peritos representaba la desestimación de la *Demanda enmendada,* ya que este caso trata de una reclamación de daños.[18] Asimismo, esbozaron que notificaron los testigos a la parte contraria el 21 de mayo de 2024.[19]

El 27 de agosto de 2024, el TPI emitió una *Orden* en la que declaró No Ha Lugar la reconsideración.[20]

Insatisfechos, los peticionarios presentaron el recurso de epígrafe y le imputaron al TPI la comisión de los siguientes errores:

---

[15] Entrada Núm. 67 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[16] Apéndice de la petición de *Certiorari*, Anejo X, pág. 48.
[17] Íd.
[18] Íd., Anejo XI, págs. 49-55.
[19] Entrada Núm. 67 del expediente digital del caso en el SUMAC.
[20] Notificada y archivada digitalmente en autos al día siguiente. Apéndice de la petición de *Certiorari,* Anejo XII, pág. 56.

ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA AL PRIVAR A LA PARTE DEMANDANTE-PETICIONARIA DE PRUEBA PERICIAL COMO PRIMERA SANCI[Ó]N.

ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA A LA PARTE DEMANDANTE COMO PRIMERA SANCI[Ó]N ANTE UNA ALEGADA ORDEN QUE NUNCA SE NOTIFIC[Ó] Y QUE EL PROPIO TRIBUNAL, SUA SPONTE, LA HAB[Í]A DEJADO SIN EFECTO AL ESTABLECER FECHA ULTERIOR A LAS PARTES PARA CONTESTAR INTERROGATORIO.

Es su posición que este es un caso sumamente complejo que requiere la utilización de varios y diversos peritos y que su eliminación constituye una desestimación de la causa de acción. También, argumentaron que el TPI no emitió orden o apercebimiento alguno respecto a los incumplimientos antes de aplicar una sanción tan severa como la eliminación de la prueba pericial y, por tanto, los elementos de la Regla 39.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2, no estaban presentes.

Por su parte, BLDM radicó un *Alegato de la parte Apelada* en el que argumentaron que los peticionarios no justificaron su incumplimiento con las órdenes del foro primario, lo que constituyó una actitud contumaz y de mala fe, al ignorar repetida y deliberadamente las órdenes y a pesar de que se le advirtió en múltiples ocasiones. A su entender, la conducta de los peticionarios no favorecía el desarrollo eficiente del caso y no existían razones válidas para evitar sanciones por su falta de diligencia. Además, planteó que el caso no es complejo y que los peticionarios poseen otras maneras de probar los daños a la propiedad, tales como otros testigos y estimados. Es decir, arguyó que la pérdida de un perito no tendría el efecto de desestimar su causa de acción, toda vez que los peticionarios anunciaron varias personas como sus testigos, dentro de los cuales se encuentran ingenieros, arquitectos, agrimensores, entre otros profesionales.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1,[21] establece las instancias en las que le foro revisor posee autoridad para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corp., et al.***, 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorar*i que se trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. Caguas v. JRO Contruction, Inc.***, 201 DPR 703 (2019).

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, debemos pasar entonces a un

---

[21] Esta Regla dispone que:
> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[22]

**B.**

En derecho procesal civil se busca facilitar el descubrimiento de prueba con el fin de colocar al tribunal en la mejor posición posible para emitir una resolución justa. ***E.L.A. v. Casta***, 162 DPR 1, 9 (2004); ***Ward v. Tribunal Superior,*** 101 DPR 865, 867 (1974). Nuestro sistema judicial promueve un descubrimiento extrajudicial de prueba que fomenta mayor flexibilidad y colaboración entre las partes. ***Alfonso Brú v. Trane Export, Inc.,*** 155 DPR 158, 167 (2001); ***Medina v. M.S. & D. Química P.R. Inc.,*** 135 DPR 716, 728 (1994). Los tribunales de primera instancia cuentan con amplia discreción para manejar el descubrimiento de prueba, ya que tienen el deber de asegurar una resolución justa, rápida y económica, sin

---

[22] Esta Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

beneficiar a ninguna de las partes. ***Rivera y otros v. Bco. Popular,*** 152 DPR 140, 155 (2000).

A su vez, los tribunales tienen el deber de desalentar la falta de diligencia y el incumplimiento de sus órdenes mediante una intervención eficaz, rápida y oportuna. ***Mejías et al. v. Carrasquillo et al.,*** 185 DPR 288, 298 (2012); ***Dávila v. Hosp. San Miguel, Inc.,*** 117 DPR 807, 814-815 (1986). Además, cuentan con la facultad discrecional, otorgada por las Reglas de Procedimiento Civil, *supra,* para desestimar una demanda o suprimir las alegaciones de una parte. Sin embargo, esta sanción solo debe imponerse en situaciones extremas donde sea evidente el desinterés y abandono total de la parte afectada. ***Mejías et al. v. Carrasquillo et al.,*** supra; ***Mun. de Arecibo v. Almac. Yakima,*** 154 DPR 217, 222-223 (2001).

En cuanto a esto, la Reglas 34.3 y 39.2(a) de Procedimiento Civil, *supra,* R. 34.3 & 39.2(a), buscan agilizar los procesos judiciales, sirviendo como mecanismos para evitar la falta de acción por parte de los peticionarios y facilitar así el curso del procedimiento. Por un lado, la Regla 34.3 de Procedimiento Civil, *supra,* le otorga al tribunal la facultad de sancionar la falta de cumplimiento de una orden judicial sobre el descubrimiento de prueba. Esta regla permite imponer varias sanciones justas, tales como impedir a la parte incumplidora presentar o defender determinadas reclamaciones o pruebas e incluso desestimar el caso o emitir una sentencia en rebeldía. Por otro lado, la Regla 39.2(a) de Procedimiento Civil, *supra,* le permite al tribunal, ya sea por iniciativa propia o a petición de parte, desestimar un caso o cualquier reclamación si los peticionarios incumplieron con las reglas o las órdenes del tribunal. No obstante, esta medida solo puede tomarse tras haber advertido a la parte afectada y brindarle una oportunidad razonable para corregir la situación, que no será

menor de treinta (30) días, salvo circunstancias excepcionales. Íd.

Es importante tener en cuenta que esta norma debe ser aplicada en el contexto de la política pública de resolver los casos en base a sus méritos. El objetivo fundamental de los tribunales es interpretar las leyes para impartir justicia. **Coll v. Picó,** 82 DPR 27, 38 (1960). Las Reglas de Procedimiento Civil, *supra,* se crearon para facilitar la consecución de la justicia y aplicarlas de manera contraria iría en contra de su propósito. **Parrilla v. Rodríguez,** 163 DPR 263, 274 (2004); **Millán v. Caribe Motors Corp.,** 83 DPR 494, 509 (1961). Así, antes de imponer sanciones severas, el tribunal debe advertir a la parte sobre las consecuencias y permitirle una oportunidad de corregir el incumplimiento.

Además, de ordinario, el Tribunal de Apelaciones no intervendrá en el manejo de los casos por el foro primario, a menos que se demuestre un abuso de discreción, parcialidad o error en la aplicación de las normas procesales o sustantivas. **Rivera y otros v. Bco Popular,** supra. Como ha señalado nuestro Tribunal Supremo, las decisiones discrecionales del TPI no deben ser revocadas a menos que se demuestre abuso de su facultad. **SLG Zapata-Rivera v. J.F. Montalvo,** 189 DPR 414, 434 (2013).

## C.

Un perito es aquel que, gracias a educación o experiencia, posee un conocimiento o una destreza sobre una materia de tal manera que puede formar una opinión que, a su vez, sirve de ayuda al juzgador. **S.L.G. Font Bardón v. Mini-Warehouse,** 179 DPR 322, 338 (2010), traduciendo a *Black´s Law Dictionary,* 8th ed., Minn., Thomson West, 2004, pág. 619. Véase, además, la Regla 703 de Evidencia, 32 LPRA Ap. VI, R. 703. Al perito se le entiende como una persona competente e idónea debido a que tiene ciertas aptitudes, conocimiento y adecuada capacidad. **S.L.G. Font Bardón v. Mini-**

*Warehouse,* supra, pág. 338, citando a *San Lorenzo Trad., Inc. v. Hernández*, 114 DPR 704, 709 (1983).

De ahí que la función del perito en un litigio es auxiliar al tribunal. *Pueblo v. Soto González,* 149 DPR 30, 41-42 (1999) (Sentencia). Véase, además, la Regla 702 de Evidencia, *supra*, R. 702. A esos efectos, la Regla 702 de Evidencia, *supra*, permite que una persona testigo, capacitada como perito, pueda testificar en forma de opiniones o de otra manera cuando conocimiento científico, técnico o especializado sería de ayuda para que el tribunal entienda la prueba o determine un hecho en controversia. De la misma forma, dicha Regla establece los siguientes factores para evaluar el valor probatorio del testimonio del perito: (1) si el testimonio se basa en hechos o información suficiente; (2) si el testimonio es el producto de principios y métodos confiables; (3) si la persona testigo aplicó principios y métodos de manera confiable a los hechos del caso; (4) si el principio en que se basa el testimonio ha sido aceptado generalmente en la comunidad científica; (5) las credenciales de la persona testigo; y (6) la parcialidad de la persona testigo. Íd.

**IV.**

En el presente caso, el TPI rechazó autorizar la presentación de prueba pericial por los peticionarios, toda vez que resolvió que incumplieron varias de sus órdenes.

En desacuerdo, los peticionarios plantean que no fueron apercibidos de la sanción severa que tomaría el foro primario, la cual, para todos los efectos, implicaría la desestimación del caso. A su vez, arguyen que no estaban presentes los elementos requeridos estatuariamente para imponer dicha sanción.

En contraste, BLDM argumenta que, en varias ocasiones, tuvo que solicitar al TPI que les ordenara a los peticionarios cumplir con los términos establecidos y que este, a su vez, les apercibió de las

consecuencias de su incumplimiento. A su entender, la prohibición al uso de prueba pericial peritos no constituía una desestimación de su caso, sino una simple sanción por sus incumplimientos. Sobre ello, plantea que los peticionarios cuentan con otros medios de prueba para demostrar los daños alegados.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso, en correcta práctica adjudicativa apelativa, a la luz de los criterios esbozados en la Regla 52.1 de Procedimiento Civil, *supra*, y en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que corresponde abstenernos de ejercer nuestra función revisora y, en su lugar, rechazar intervenir con el dictamen del foro primario. Un examen sosegado del trámite procesal de este caso y de la determinación recurrida no arroja error alguno que amerite nuestra intervención. No surge de los autos que el TPI haya incurrido en error, prejuicio, parcialidad o que haya abusado de su discreción. Por el contrario, la determinación del foro primario fue esencialmente correcta al no autorizar la presentación de prueba pericial como sanción. Ello, en ejercicio válido de su poder discrecional para dictar el manejo del caso.

En repetidas ocasiones, los peticionarios incumplieron con los términos dispuestos por el TPI y las oportunidades brindadas para anunciar la prueba pericial. Tal y como se consigna en la *Resolución* recurrida, no presentaron el informe pericial previo al 14 de junio de 2024, ni solicitaron una prórroga para someterlo posteriormente. Más aún, el informe pericial no había sido radicado para el momento en el que el foro primario emitió su dictamen. En ningún momento adujeron razón o causa para justificar su reiterado incumplimiento.

Peor aún, no anunciaron qué tipo de prueba pericial es la que se proponían presentar, ni el objetivo o fundamento de esta. Tampoco identificaron al Tribunal quiénes serían sus peritos. Adviértase, además, que en los testigos anunciados existen varios

profesionales como arquitectos, agrimensores e ingenieros, entre otros profesionales que deben probar las alegaciones. **En esta etapa de los procedimientos,** no intervendremos con el manejo del caso del hermano foro de primera instancia.

En vista de lo anterior, corresponde denegar la expedición del *Certiorari* solicitado.

**V.**

Por los fundamentos pormenorizados, se *deniega* la expedición del auto de *Certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones