Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Maricarmen Bonilla Alverio, M.D.P.B., menor representado por Maricarmen Bonilla Alverio, Myrna Enid Pérez López y Otros<br><br>Recurrido<br><br>vs.<br><br>Metro Hato Rey, Inc. H/N/C Hospital Pavía Hato Rey, Emergency Physician Providers LLC, Dr. Daniel Roques Arroyo por si y en Representación de su Sociedad Legal de Gananciales Compuesta con Jane Doe y Otros<br><br>Peticionarios | KLCE202500008 | ***CERTIORARI***<br>procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br><br>Civil Núm.:<br>SJ2022CV08969<br><br><br><br>Sobre:<br>Impericia Médica |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón.

Rivera Colón, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de febrero de 2025.

Comparece ante nos, el Dr. Daniel Roques Arroyo, la Dra. Kamir Garcés Mejías y la aseguradora de ambos, SIMED (en conjunto, peticionarios), quienes presentan recurso de *Certiorari* en el que solicitan la revocación de la "Minuta" emitida el 9 de septiembre de 2024[1] y posteriormente enmendada el 5 de diciembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI o foro primario). Mediante el referido dictamen, el foro primario denegó un nuevo perito propuesto por el Dr. Roques Arroyo.

---

[1] Notificada el 10 y enmendada el 26 de septiembre de 2024.

Número Identificador

SEN2025 _____

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, se expide el auto de *Certiorari* y se confirma el dictamen recurrido.

**I.**

El 12 de octubre de 2022, la señora Maricarmen Bonilla Alverio, por sí y en representación de la menor Maridi Dinebe Pérez Bonilla (en lo sucesivo, recurridas) presentó una "Demanda" por daños y perjuicios e impericia médica contra, entre otros codemandados, los peticionarios. En resumidas cuentas, alegó que los peticionarios fueron negligentes al causarle la muerte a su esposo, el Sr. Diego Pérez López. A raíz de ello, reclamó $450,000.00 en daños morales, $500,000.00 por las angustias mentales sufridas por la menor, $1,000,000.00 en concepto de lucro cesante, $100,000.00 en daños heredados, una suma adicional de $4,600,000.00 en daños, más intereses, costas, gastos y honorarios de abogado.

Luego de varias incidencias procesales impertinentes a la controversia ante nuestra consideración, el 14 de abril de 2023 las partes presentaron su Informe para el Manejo de Caso. En él se notificó al foro primario que los peticionarios utilizarían tres peritos, a saber, un neurólogo, un infectólogo y una emergencióloga. Por su parte, las recurridas anunciaron dos peritos, un emergenciólogo y un neurólogo.

En respuesta, el 17 de abril de 2023, el TPI notificó una "Orden" atendiendo el informe. Dispuso el foro: 1) que todo descubrimiento de prueba escrito pendiente por cursar debía notificarse en quince (15) días, so pena de darse por renunciado, y 2) que los demandados debían notificar sus informes periciales en sesenta (60) días, ósea, hasta el 16 de junio de 2023. Finalmente, señaló la conferencia inicial para el 20 de junio de 2023.

Así las cosas, el 6 de junio de 2023, Emergency Physician Providers, LLC, codemandado en el pleito, presentó "Moción Solicitando Prórroga para Informar Nombre de Peritos y Someter Informes Periciales de los Demandados". Al día siguiente, entiéndase el 7 de junio de 2023, el TPI prorrogó el término, extendiéndolo hasta el 31 de octubre de 2023.

El 28 de agosto de 2023 se celebró una conferencia inicial donde se discutieron varios asuntos relacionados al descubrimiento de prueba. Allí, las partes informaron al foro primario que se habían cursado calendarios de deposiciones, al igual que interrogatorios y producción de documentos. Asimismo, la codemandada Emergency Physician Providers, LLC notificó que se encontraba en el proceso de contratación de peritos, mientras que los peticionarios informaron que ya habían contratado prueba pericial por lo que estarían rindiendo su informe en treinta (30) días.

En respuesta, el TPI emitió una "Minuta" el 31 de agosto de 2023, en la cual extendió el término para rendir informes periciales hasta el 30 de noviembre de 2023 y señaló conferencia con antelación a juicio para el 9 de octubre de 2024.[2]

Al transcurrir un año, se celebró una vista transaccional el 9 de septiembre de 2024 a la cual comparecieron ambas partes. En lo que nos concierne, los peticionarios solicitaron que se les permitiera utilizar un nuevo perito neurocirujano, el Dr. Marcos Mercado. Escuchada la posición de ambas partes, el Tribunal de Primera Instancia emitió una "Minuta" en la cual dispuso que no existía justificación para permitir la nueva prueba pericial.[3]

Posteriormente, el 13 de septiembre de 2024, el Dr. Roques Arroyo presentó una "Moción Solicitando se aclare Orden del

---

[2] Véase, apéndice pág. 332-334.

[3] Esta "minuta" fue enmendada el 26 de septiembre de 2024, a los efectos de mencionar que "Se declara no ha lugar la solicitud de la parte codemandada Dr. Daniel Roques Arroyo para contratar nuevo perito". Véase, apéndice pág. 405.

Tribunal", y suplicó al foro primario que clarificara si su petición fue denegada.

Ese mismo día, entiéndase, el 13 de septiembre de 2024,[4] el foro recurrido emitió una "Orden" mediante la cual dilucidó que la solicitud del nuevo perito fue denegada. Añadió que "se determinó que del expediente surgen varias instancias en las cuales el Tribunal discutió los términos para notificar los informes periciales de los demandados e inclusive se aprobaron prórrogas para la toma de deposiciones de éstos. Véase Sumac, 66, 75, 76, 77 y 100". [5]

Inconforme, el 19 de septiembre de 2024, el Dr. Roques Arroyo presentó una "Moción de Reconsideración", y reiteró su solicitud en cuanto a que se le permita utilizar el informe y testimonio del médico neurocirujano. Las recurridas se opusieron mediante "Replica a Moción de Reconsideración" presentada el 27 de septiembre de 2024.

Atendidas las posturas de ambas partes, el 30 de septiembre de 2024,[6] el foro primario declaró No Ha Lugar la "Moción de Reconsideración" presentada por el Dr. Roques Arroyo.

Insatisfechos con el dictamen, los peticionarios recurrieron a este foro apelativo intermedio mediante un recurso de *Certiorari,* el cual desestimamos por prematuro el 8 de noviembre de 2024,[7] ya que la "Minuta" no contaba con la firma de la Jueza que emitió el dictamen. Posterior a ello, el TPI corrigió su omisión mediante una "Minuta-Resolución Enmendada" notificada el 5 de diciembre de 2024.

Comenzado oficialmente el término para recurrir a este Tribunal, los peticionarios presentaron un segundo recurso de

---

[4] Notificada en igual fecha.
[5] Apéndice del recurso de *Certiorari*, pág. 394.
[6] Notificada ese mismo día.
[7] "Sentencia" identificada con el alfanumérico KLCE202401177.

*Certiorari* el 3 de enero de 2025. En esta ocasión, señalaron la comisión del siguiente error:

> *Erró o abusó de su discreción el Tribunal de Primera Instancia al denegar el uso de prueba pericial en neurocirugía que fue anunciada y cuya opinión pericial fue resumida en un informe pericial notificado a las partes estando activo el descubrimiento de prueba.*

Mediante "Resolución" emitida el 15 de enero de 2025, concedimos a las recurridas un término, a vencer el 27 de enero de 2025, para presentar su alegato en oposición. Según ordenado, las recurridas presentaron su "Alegato en Oposición" en la fecha límite para ello. Por tanto, procedemos a resolver con el beneficio de ambas comparecencias.

**II.**

**A.**

El recurso de *Certiorari* es el mecanismo procesal utilizado para revisar aquellas resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone que, como norma general, dicho recurso solo será expedido por este Tribunal de Apelaciones en dos instancias, a saber: (1) cuando se recurra de una resolución u orden bajo las Reglas 56 y 57; o (2) cuando se recurra de la denegatoria de una moción de carácter dispositivo.

No obstante lo anterior, y a modo de excepción, este foro apelativo intermedio podrá revisar órdenes o resoluciones interlocutorias dictadas por el foro primario cuando se recurra de lo siguiente: (1) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (2) asuntos relativos a privilegios evidenciarios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia; y (5) en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.*

Por su parte, nuestro Alto Foro ha expresado que, el auto de *Certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46. Si bien el auto de *Certiorari* es un vehículo procesal extraordinario de carácter discrecional, al atender el recurso no debemos "hacer abstracción del resto del Derecho". *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 711 (2019).

Así, a los fines de ejercer sabiamente nuestra facultad discrecional en la consideración de los asuntos planteados mediante dicho recurso, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, imparte que esta segunda instancia judicial tomará en consideración los siguientes criterios al determinar si procede o no la expedición de un auto de *Certiorari*:

> *(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*
>
> *(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.*
>
> *(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*
>
> *(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*
>
> *(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
>
> *(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
>
> *(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*

**B.**

El descubrimiento de prueba es el mecanismo utilizado por las partes para "obtener hechos, título, documentos u otras cosas que están en poder del demandado o que son de su exclusivo conocimiento y que son necesarias [...] para hacer valer sus derechos". *McNeil Healthcare v. Mun. Las Piedras,* 206 DPR 659, 672 (2021), citando a I. Rivera García, <u>Diccionario de Términos Jurídicos</u>, 3ra ed. rev., San Juan, Ed. LexisNexis, 2000, pág. 70. Dicho mecanismo persigue cuatro objetivos fundamentales para el cabal desenvolvimiento del proceso judicial, a saber: (1) precisar los asuntos en controversia; (2) obtener evidencia para ser utilizada en el juicio; (3) facilitar la búsqueda de la verdad; y (4) perpetuar evidencia. *Berríos Falcón v. Torres Merced,* 175 DPR 962, 971 (2009). De esta forma, se coloca al juzgador de los hechos "en la mejor posición posible para resolver justamente". *E.L.A. v. Casta,* 162 DPR 1, 9 (2004). En nuestro ordenamiento jurídico, el descubrimiento de prueba y su alcance está regulado por la Regla 23.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 23.1.

En lo concerniente, el inciso (a) de la antedicha regla estatuye lo siguiente:

> *En general. Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluso la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, información almacenada electrónicamente, documentos u otros objetos tangibles, y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible.*
> *Íd.*

Del citado precepto legal se desprende el principio de que el descubrimiento de prueba debe ser amplio y liberal. *McNeil Healthcare v. Mun. Las Piedras, supra,* a la pág. 672. Ello, ya que "[e]l propósito de esta norma liberal de descubrimiento de prueba

es que aflore la verdad de lo ocurrido, evitando así los inconvenientes, sorpresas e injusticias que surgen cuando las partes ignoran hasta el día de la vista las cuestiones y los hechos que en realidad son objeto del litigio". Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., San Juan, Pubs. JTS, 2011, T. III, pág. 841.

Ahora bien, esto no significa que el descubrimiento de prueba sea irrestricto o ilimitado. Tomando en consideración que nuestras Reglas de Procedimiento Civil disponen la solución justa, rápida y económica de las disputas, toda persona que utilice algún método de descubrimiento de prueba deberá hacerlo de forma diligente. *PV Properties v. El Jíbarito et al.*, 199 DPR 603, 609-610 (2018). Por ende, la amplitud y libertad durante el descubrimiento de prueba no es absoluta. *Íd.* a la pág. 609.

### C.

Salvo contadas excepciones, en todos los casos contenciosos se celebrará una reunión entre los abogados de las partes con el propósito de preparar el llamado Informe para el Manejo del Caso, el cual incluirá, entre otras cosas, "un plan itinerario de todo descubrimiento de prueba que [las partes] se propongan realizar, incluyendo las fechas para su cumplimiento". Regla 37.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 37.1.

Una vez preparado el Informe para el Manejo del Caso, el tribunal señalará una conferencia inicial en la cual considerará, entre otros asuntos, "[l]os límites, el alcance y el término final para concluir el descubrimiento de prueba pendiente". Regla 37.2 (g) de Procedimiento Civil, 32 LPRA Ap. V, R. 37.2 (g). Posteriormente, el tribunal emitirá una orden para la calendarización del proceso, conforme lo acordado en la conferencia inicial. Regla 37.3 (a) de Procedimiento Civil, 32 LPRA Ap. V, R. 37.3 (a).

Nuestro Tribunal Supremo discutió el tema de órdenes de calendarización en *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023). Allí, el Alto Foro citó las siguientes expresiones del profesor Hernández Colón:

> *El término límite para utilizar los medios de descubrimiento de prueba se determinará en la orden de calendarización que el juez tenga a bien adoptar conforme con la complejidad de las controversias y la cantidad de partes involucradas en el pleito. Una vez las partes sometan el Informe para el Manejo del Caso que exige la R. 37.1, 2009, en donde detallarán toda la información y la prueba que hayan intercambiado; especificarán la que falta por intercambiar y el calendario para la utilización de los mecanismos de descubrimiento,* ***el juez podrá emitir una orden de calendarización en la que calendarice el descubrimiento de prueba acordado entre las partes o determinado en la Conferencia Inicial y precise el término para concluir con la etapa del descubrimiento de prueba****. Íd.* a la pág. 204 (citando a R. Hernández Colón, <u>Práctica Jurídica de Puerto Rico: Derecho Procesal Civil</u>, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 335) (énfasis suplido).

En cuanto a los términos y los señalamientos fijados en la orden de calendarización, estos serán de estricto cumplimiento, y estarán sujetos a la sanción establecida en la Regla 37.7, *infra.* Regla 37.3 (c) de Procedimiento Civil, 32 LPRA Ap. V, R. 37.3 (c).

**D.**

Además, resulta pertinente enfatizar el hecho de que el Tribunal de Primera Instancia posee gran flexibilidad y discreción para lidiar con el manejo diario de los asuntos judiciales. *In re Collazo I*, 159 DPR 141 (2003). Por esta razón, se les ha reconocido a los jueces el poder y la autoridad suficiente para conducir los asuntos ante su consideración de la forma y manera que su buen juicio les indique. *Íd.*

En ese sentido, nuestra Alta Curia ha establecido que, como norma general, el Tribunal de Apelaciones no intervendrá en el manejo del caso ante la consideración del foro primario. *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000). A modo de

excepción, este foro revisor puede intervenir en aquellas situaciones en que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción o (3) se equivocó en interpretar o aplicar cualquier norma procesal o de derecho sustantivo. *Íd.*

En otras palabras, "las decisiones discrecionales que toma el Tribunal de Primera Instancia no serán revocadas a menos que se demuestre que ese foro abusó de su discreción". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013).

**III.**

Los peticionarios arguyen que resultaría en un abuso de discreción el no permitir que se incluya el perito propuesto, ya que el descubrimiento de prueba debe ser amplio y liberal pues su propósito es la búsqueda de la verdad, y en esta instancia, la pericia del Dr. Marcos Mercado resulta indispensable para obtener un cuadro claro de lo que realmente sucedió. Además, puntualizaron que la presentación de este nuevo perito no tiene el propósito de dilatar los procedimientos puesto que, como se notificó la información del perito y su informe antes de la conferencia con antelación al juicio, las recurridas tienen oportunidad de deponer el neurocirujano.

Por su parte, las recurridas entienden que la inclusión de un perito adicional dilataría los procedimientos, ya que han transcurrido varios meses desde su última deposición y, al momento de anunciarse el perito, solo faltaban 30 días para la celebración de la conferencia con antelación al juicio. Añadieron que los peticionarios estuvieron más de un año en búsqueda de un neurocirujano —hecho que nunca notificaron— y anunciaron por primera vez su participación en el pleito el 9 de septiembre de 2024, aun cuando se desprende del informe que el perito llevaba

tiempo trabajando en el caso. Finalmente, las recurridas resaltaron que los peticionarios se beneficiaron de varias prorrogas y que, a pesar de esto, solicitaron una extensión adicional al término de cumplimiento estricto, sin presentar justa causa para ello.

Contrario a las estimaciones de los peticionarios, este Tribunal no puede concluir que las actuaciones del TPI en el manejo del descubrimiento de prueba hayan rebasado su discreción judicial. Entendemos que la postura del foro primario de aferrar las partes al calendario impuesto, y en consecuencia hacer cumplir la fecha prorrogada de presentación de informes periciales, fue una determinación cónsona con la flexibilidad que posee un tribunal de instancia para llevar a cabo una sana administración de los asuntos judiciales ante su consideración.

En virtud de ello, procedemos a expedir el presente auto de *Certiorari* para ratificar la actuación del foro primario.

Comencemos examinando la calendarización del descubrimiento de prueba impuesta por el TPI. Luego de evaluado el "Informe de Manejo de Caso", el foro primario ordenó notificar todo descubrimiento de prueba escrito en quince (15) días y concedió hasta el 16 de junio de 2023 para que los demandados informaran sus informes periciales, puesto que la próxima etapa de los procedimientos era la celebración de la conferencia inicial.

Antes de que se celebrase dicha conferencia, el TPI, a solicitud de parte, prorrogó el término para la presentación de los informes hasta el 31 de octubre de 2023.

Celebrada la conferencia inicial el 28 de agosto de 2023, las recurridas informaron al TPI que habían notificado todos sus informes periciales. Por su parte, los peticionarios informaron que habían contratado sus peritos, por lo que garantizaron al foro primario que notificarían los informes en treinta (30) días.

En beneficio de varias partes demandadas, incluyendo los peticionarios, que aún quedaban por notificar sus informes periciales, el TPI otorgó una nueva extensión del término hasta el 30 de noviembre de 2023. Pese a lo anterior, no fue hasta el 9 de septiembre de 2024, diez (10) meses después del vencimiento del término, y en plena vista transaccional, que por primera vez los peticionarios solicitaron se les permitiera utilizar el testimonio e informe pericial de un neurocirujano.

Queremos resaltar que, contrario a la postura de los peticionarios, el descubrimiento de prueba en este caso había culminado. Según expusimos en el acápite del derecho aplicable, el TPI puede emitir una orden de calendarización recogiendo todo lo concerniente al descubrimiento de prueba, incluyendo los términos que gobiernen dicho proceso, según acordado entre las partes y/o determinado en la conferencia inicial. Precisamente, eso fue lo que ocurrió en este caso.

Arraigados en el axioma jurídico de que el nombre no hace la cosa,[8] somos del criterio que la "Minuta" del 31 de agosto de 2023, la cual recoge todo lo discutido en la conferencia inicial sobre el descubrimiento de prueba, obra como una orden de calendarización ya que el TPI dispuso del estatus del descubrimiento y estableció varias fechas para este, incluyendo la fecha final para presentar los informes periciales.

Además, en la "Minuta" de la vista transaccional del 9 de septiembre de 2024 el TPI expresó que no estaría *reabriendo* el descubrimiento de prueba para incluir al nuevo perito, reafirmando que las fechas fijadas para presentar los informes —y sus respectivas prórrogas— obraban como las fechas de cierre del descubrimiento de prueba. No podemos pasar por desapercibido

---

[8] *Calderón v. ELA*, 196 DPR 984, 988 (2016); *Hernández Torres v. Hernández Colón,* 127 DPR 448, 463 (1990).

que los informes periciales eran los últimos componentes del descubrimiento, según le informaron las partes al foro primario.

Lo cierto es que los procedimientos en este caso ya estaban en una etapa avanzada. Así que, la propuesta de un nuevo perito casi un año luego de la fecha límite para ello, y apenas 30 días antes de la conferencia con antelación al juicio indudablemente dilataría el pleito. Esta nueva evidencia obligaría a las recurridas a deponer al perito y, de ser necesario, modificar sus teorías y estrategias de litigio, procesos que provocarían la posposición de señalamientos, abonando así a una dilación que consideramos impermisible.

Ofrecer nuestra anuencia a dicha demora iría en contra de nuestra obligación como tribunal de justicia de garantizar una solución justa, rápida y económica del caso. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R. 1; *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465 (2022).

Finalmente, entendemos necesario diferenciar este dictamen de lo resuelto por nuestro Tribunal Supremo en *Rivera et al. v. Arcos Dorados et al.*, *supra.* Allí, nuestra Alta Curia revocó al TPI por sancionar a una parte con la exclusión de un perito en un caso de impericia médica. No obstante, el descubrimiento de prueba en *Rivera et al. v. Arcos Dorados et al.*, *supra,* no había culminado y la toma de deposiciones se encontraba pendiente. *Íd.* a la pág. 215. Por tanto, el pleito se hallaba en una etapa distinta a la del caso de autos.

Por otra parte, el Tribunal Supremo entendió que la exclusión del perito pudiese ser análoga a la medida extrema de desestimar el caso. *Íd.* Dicha preocupación no está presente en el caso de marras ya que nuestro dictamen no deja a los peticionarios desprovistos de evidencia pericial pues cuentan con tres (3) peritos

que fueron depuestos y cuyos informes y testimonios podrán utilizarse en el juicio.

**IV.**

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, expedimos el auto de *Certiorari* solicitado con el fin de confirmar la "Minuta-Resolución Enmendada" notificada el 5 de diciembre de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones